Richard J. **BRIGNOLI**, Plaintiff,

v.

**BALCH, HARDY & SCHEINMAN, INC.**, Defendant.

No. 86 Civ. 4103 (RWS).

United States District Court, S.D. New York.

May 31, 1989.

Scheffler Karlinsky & Stein (Martin Karlinsky, of counsel), Arie E. David, (Arie David, Michael E. Plank, Anne M. Nichter, of counsel), New York City, for plaintiff.

Richard J. Brignoli, pro se.

Jacobson & Triggs, New York City, for defendant; (John F. Triggs, Kristine M. Reddington, of counsel).

## OPINION

SWEET, District Judge.

Defendant Balch Hardy & Scheinman, Inc. ("BHS") has moved pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and § 487 of New York State Judiciary Law to impose sanctions against plaintiff Richard J. Brignoli ("Brignoli") and his prior counsel Arie E. David ("David"). Brignoli and David have moved for sanctions under Rule 11 against BHS, BHS's former attorneys Charlotte M. Fischman ("Fischman") of Kramer, Levin, Nessen, Kamin & Frankel ("Kramer Levin") and BHS's current attorneys, John F. Triggs ("Triggs") of Jacobson and Triggs, or in the alternative, to refer all matters to a formal judicial investigation under Rule

4(k) of the Local Rules of this court. For the reasons set forth below, BHS's motion is granted in part and denied in part, and Brignoli's and David's motion is denied.

### Prior Proceedings

In an opinion dated September 30, 1986, *Brignoli v. Balch Hardy and Scheinman, Inc.*, 645 F.Supp. 1201 (S.D.N.Y.1986), BHS's motion to dismiss Brignoli's complaint for failure to state a cause of action was granted as to Claims Three, Five and Seven, and denied as to Claims One, Two, Four and Six. BHS's motion for sanctions was denied. In an opinion dated on October 3, 1988, this court granted BHS's motion to dismiss Brignoli's complaint for lack of subject matter jurisdiction on the grounds that there was no diversity of citizenship between the parties. Brignoli's motion for sanctions was denied. *Brignoli v. Balch Hardy and Scheinman, Inc.*, 696 F.Supp. 37 (S.D.N.Y.1988) (the "October Opinion"). Familiarity with these opinions is assumed.

### Rule 11

■ Rule 11 provides:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. In applying Rule 11, courts must assess whether an attorney's conduct was objectively reasonable as of the time he or she signed the pleading, motion, or other paper. *See Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1469–70 (2d Cir.1988), *cert. granted,* — U.S. —, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989); *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388 (2d Cir.1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Oliveri v. Thompson*, 803 F.2d 1265, 1274–75 (2d Cir. 1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

### 28 U.S.C. § 1927

28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs.

The purpose of the statute is "to deter unnecessary delays in litigation." H.R. Conf.Rep. No. 1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S.Code Cong. & Ad. News, 2716, 2782, cited in *Oliveri v. Thompson*, 803 F.2d at 1273. Furthermore, "an award made under § 1927 must be supported by a finding of bad faith...." *Oliveri* at 1273.

### Diversity Jurisdiction

■ BHS's primary ground for its motion for sanctions is that Brignoli and his attorneys wilfully misstated Brignoli's residence for the purpose of purporting to invoke this Court's jurisdiction based upon diversity citizenship, that Brignoli signed documents, including affidavits and deposition transcripts, in which he swore to facts about his place of residence which he knew were false, and that David signed pleadings which based jurisdiction upon diversity even though he knew that Brignoli was not a Connecticut resident.

In the October Opinion, this court dismissed the Complaint for lack of subject matter jurisdiction, holding that Brignoli failed to establish his intent to be domiciled in Connecticut. One among many of the factors leading to this result was that certain documents, including portions of Brignoli's New York State tax returns that would have enabled BHS to determine whether Brignoli filed as a New York resident or as a non-resident, were not produced despite four separate directions by the court. On May 27, at the oral argument of the motion to dismiss, Brignoli was given

one more week to produce New York State tax returns, but again, no New York State tax returns were produced. The failure to produce the returns gave rise to an unfavorable inference, which ultimately turned out to be the fact, namely, that Brignoli had filed his state tax returns as a New York resident.

According to David and attorneys in his office, they "believed" that the New York State returns had been sent to BHS's attorneys as early as February, 1988, and if they were not, the failure to produce the returns was unintentional. Moreover, they contend that a discovery conference was scheduled for May 6, 1988 at which they would have produced the New York tax returns. However, the conference was cancelled by Fischman, BHS's attorney.

In support of its motion for sanctions, BHS has submitted an affidavit by Brignoli's former accountant, Robert Wishnew ("Wishnew"). Wishnew states that he prepared Brignoli's 1985 and 1986 New York State resident tax returns and gave the original and one copy of each to Brignoli to sign and file. In the late spring or early summer of 1986, Wishnew claims, David asked him to change Brignoli's address on his New York and federal tax returns to reflect a Connecticut address. Wishnew performed the change. In mid to late December 1987, Wishnew says that David called him and said that the 1985 and 1986 New York State tax returns were incorrect and Brignoli should have filed as a non-resident of the State of New York. David and Wishnew discussed Brignoli's residence, but Wishnew refused to prepare amended returns declaring Brignoli a non-resident of the State of New York.

David claims that Wishnew's affidavit is false, and states that Brignoli himself told Wishnew, in David's presence, that he was a Connecticut resident. David also denies asking Wishnew to prepare amended returns.

■ Improperly invoking the subject matter jurisdiction of a federal district court is sanctionable under Rule 11. *See Official Publications, Inc. v. Kable News Company, Inc.*, 692 F.Supp 239, 248 (S.D.

N.Y.1988); *Peter Weisman v. Lewis A. Rivlin*, 598 F.Supp. 724, 726 (D.D.C.1984); *Dubisky v. Owens*, No. 86 Civ.1920, slip op., 1986 WL 12042 (E.D.Ill. Oct. 23, 1986) ("plaintiff's nebulous allegations as to his own citizenship and domicile, upon which he has attempted to swing like a willow branch in the wind between the Illinois–Wisconsin border when making his arguments on jurisdiction and venue, ... fall below the minimal standard of appropriate pleading contemplated by Rule 11.").

Although the failure to produce Brignoli's New York returns violated the discovery orders of the court, the fact that Brignoli filed as a New York resident would not have been, by itself, dispositive of the diversity motion. As described in the October opinion, there were several connections between Brignoli and Connecticut. Ultimately, he was unable to meet his burden of proof as to his intent to be domiciled in Connecticut. However, no one factor, including the tax returns, proved his New York domicile. Moreover, no case has been cited, nor has any been found by this court, which holds that if an individual files resident taxes in New York, that individual cannot be domiciled in another state.

Thus, David's conduct escapes sanctions under Rule 11 pursuant to the *Calloway* test, for there was an arguable legal issue as to whether Brignoli was domiciled in Connecticut or in New York. As for the contention that Brignoli had previously asserted New York as his residence in an unrelated litigation, *Brignoli Models, Inc. v. Hiebaum*, that litigation was filed in 1983, and was thus not entirely relevant to the determination of his residence as of 1986 when this case was filed. Therefore, BHS's motion for sanctions under Rule 11 is denied.

*The Sixth Claim*

■ The Sixth Claim of the amended complaint alleges that certain former employees of Brignoli Models, Inc. ("BMI") pirated proprietary information or trade secrets concerning certain computer programs. BHS moved to dismiss the Sixth Claim on the grounds that Brignoli lacked standing to raise it and that it duplicated

claims asserted by BMI in the related litigation, *Brignoli Models, Inc., v. Balch Hardy & Scheinman, Inc.*, 87 Civ. 5593 (RWS) ("Case II"). This court, in the September opinion, denied the motion to dismiss the Claim, holding that the complaint's allegation that the employees who had been given access to confidential information "were under a duty and had agreed not to disclose or use ... [the] information" could be construed to say that the employees had agreed with Brignoli not to disclose. 645 F.Supp. 1201, 1208.

Now, BHS contends that Brignoli lied in his December 9, 1987 affidavit in which he asserted that the computer programs pertinent to the Sixth Claim were owned partly by himself, and not by BMI, for in Case II, Brignoli testified that the computer programs were, and always had been, owned by BMI and not by himself personally. Further, that BMI owns the programs was repeated in the First Amended Answer and Counterclaims filed on Brignoli's behalf in another lawsuit pending before this court, *John J. Curley v. Brignoli Curley & Roberts, Assoc.*, 88 Civ. 5307 (MP). Moreover, the state court action brought by Brignoli after the dismissal of this case does not include aspects of the Sixth claim.

A further hearing would be required to determine whether Brignoli, who developed the options trading programs which are the basis of the Sixth Claim, retains any ownership rights in the programs, and therefore whether there was any duty owed to Brignoli. Under such circumstances, the apparent discrepancy between the complaint here and Brignoli's testimony as to ownership of the programs does not rise to the level of a Rule 11 violation.

*Prolonged Discovery*

 A third basis for BHS's motion for sanctions is that the behavior of Brignoli and David increased considerably their costs of defending this lawsuit. BHS contends that its costs have been inflated by Brignoli's and David's misconduct in the discovery process. In particular, it claims that Brignoli made a mockery of BHS's attempts to take his deposition, citing his inability to answer questions such as whether or not he was divorced. However, Brignoli was only refusing to answer questions when so advised by his attorney, David. Thus, his behavior was not unreasonable, vexatious and based upon bad faith.

As for David and those associated with him, in addition to prolonging Brignoli's deposition, they unnecessarily protracted the discovery process at considerable expense to defendants. Transcripts of depositions which David attended are replete with repetitive questions, improper objections and directions to clients not to answer proper questions, as well as testimony by David on substantive issues on behalf of his clients. Moreover, David made speaking objections even after the court expressly prohibited them. Not surprisingly, depositions which David and his colleagues attended lasted hours longer than necessary as a result of his behavior.[1] In addition, David and others in his office scheduled depositions of third parties without providing notice to defendant's counsel, and aborted third party discovery against American Express ("Amex") initiated by BHS, advising Amex that it need not comply with BHS's subpoenas. Finally, as described above, David refused to produce documents after the court directed him to do so, resulting in otherwise unnecessary motions to compel such production.

David's behavior in discovery in this action "unreasonably and vexatiously" multiplied proceedings in this case. Moreover, his conduct was "of an egregious nature, stamped by bad faith...." *Colucci v. New York Times Co.*, 533 F.Supp. 1011, 1014 (S.D.N.Y.1982); *see also Oliveri v. Thompson*, 803 F.2d at 1273. Thus, the behavior of David and his colleagues is subject to sanctions under 28 U.S.C. § 1927.

*§ 487 of the New York Judiciary Law*

 According to § 487:

An attorney or counselor who:

1. Is guilty of any deceit or collusion, or consents to any deceit or collusion,

---

[1] Indeed, one deposition of a non-technical witness lasted more than eight full days.

with intent to deceive the court or any party; or,

2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y.Jud.Law § 487 (McKinney 1983).

This statute is "little known and seldom used," and is reserved for instances of attorney misconduct amounting to a "chronic and extreme pattern of legal delinquency." *Wiggin v. Gordon,* 115 Misc.2d 1071, 455 N.Y.S.2d 205 (N.Y.City Civ.Ct., Queens County, 1982). Because David's behavior in this case this does not quite amount to "chronic and extreme" delinquency, he is not liable for treble damages under this section.

*Brignoli's and David's Motion* [2]

Brignoli's and David's motion for rule 11 sanctions is based on the impropriety of BHS'S motion. The granting in part of BHS's motion indicates that defendants had an adequate basis upon which to bring its motion, and Brignoli's and David's motion is denied.

*Conclusion*

For the reasons above, BHS's motion for Rule 11 sanctions against Brignoli and David is denied, as is its motion under N.Y.Jud.Law § 487. The motion for sanctions under § 1927 is granted against David. David will be liable for the unnecessary and excessive expenses incurred by BHS in defending this lawsuit as a result of David's vexatious behavior. BHS's counsel is directed to serve and file an affidavit detailing the time spent on, and costs associated with these unnecessary steps. An accounting of reasonable fees, costs and expenses incurred by BHS will be submitted by June 16, any opposing papers

2. This court takes no position at this time with

will be submitted on June 22 and the matter will be heard on June 23, 1989.

It is so ordered.

respect to David's standing to bring this motion.