**Leon Firman WOOD, Jr., Plaintiff,**

v.

**BROSSE U.S.A., INC., Defendant.**

**No. 91 Civ. 7176 (RWS).**

United States District Court, S.D. New York.

June 2, 1993.

**46**

Louis C. Pulvermacher, P.C., New York City, for plaintiff; Louis C. Pulvermacher, of counsel.

Pavia & Harcourt, New York City, for defendant; Steven Skulnik, Helen A. Rella, of counsel.

## OPINION

SWEET, District Judge.

Defendant Brosse U.S.A., Inc. ("Brosse") has moved pursuant to Rule 11, Fed.R.Civ. P., 28 U.S.C. § 1927, and this Court's inherent power, for an order sanctioning the Plaintiff, Leon Firman Wood, Jr. ("Wood"), and Wood's counsel, Louis C. Pulvermacher, P.C. ("Pulvermacher"), for frivolous and bad faith conduct in bringing and maintaining various claims in this action. For the reasons set forth below, the motion is granted.

### Background

The parties to this diversity action, the factual background of the dispute, and the specific allegations of Wood's Complaint are described in this Court's previous opinion, familiarity with which is presumed. *See Wood v. Brosse U.S.A., Inc.,* 788 F.Supp. 772, 773–74 (S.D.N.Y.1992) (the "Opinion"). Only those facts relevant to the present motion are rehearsed below.

According to Wood's Complaint, he and Brosse entered into a "Letter Agreement" in 1988 or 1989 covering the period from January 1, 1989 to December 31, 1990. The agreement apparently stated that Wood would received an annual salary of $84,000 in 1989, to be raised to $100,000 in 1990, and subject to an annual cost of living adjustment. It also allegedly called for Wood to receive the following: an automobile; a contribution to a profiting sharing plan of at least $20,000 a year; three weeks of paid vacation; a bonus of $13,000 to $15,000 a year when sales for that year were within 10% of the previous year's gross; and severance pay, bonus, profit share, and use of the automobile through the end of the year in the event Wood was terminated.

The parties allegedly agreed to extend the terms of the Letter Agreement through the end of 1991 in January or February 1991. Wood contends, however, that, in violation of the Letter Agreement, Brosse's president hired a younger man at a lower salary to perform Wood's duties in May 1991 and fired Wood on August 23, 1991. On the day he was fired, Wood was apparently told to surrender his car immediately. Wood also claims he enjoyed only two out of the three

weeks of vacation to which he was allegedly entitled in 1991.

Wood set forth eight causes of action in his Complaint.[1] The First, Second, Third, Fifth, and Sixth Causes of Action appear to allege that Brosse breached the agreement by taking back the car and by not paying Wood severance pay, vacation pay, the balance of his bonus for 1990, his bonus and profit sharing entitlement for 1991, and cost of living allowances for 1990 and 1991. The Fourth Cause of Action alleges that Brosse tortiously interfered with the Letter Agreement. The Seventh seeks compensatory and punitive damages under New York's Human Rights Law, N.Y.Exec.Law §§ 290–301, while the Eighth seeks damages for emotional distress.

In the Opinion, Brosse's Rule 12(b)(6) motion to dismiss Wood's Complaint was granted as to the Fourth and Eighth Causes of Action and as to the punitive damages portion of the claim set forth in the Seventh Cause of Action. *See* 788 F.Supp. at 775. With regard to the Second, Fifth, and Sixth Causes of Action, Brosse sought to dismiss these contentions on the basis of various discrepancies between the allegations set forth in the Complaint and the alleged Letter Agreement. However, because the Complaint did not incorporate the Letter Agreement by reference, the Court declined to address those contentions and denied Brosse's motion as to them. *See id.*

Following the disposition of Brosse's Rule 12(b)(6) motion, discovery continued apace through August 19, 1992. The day before the discovery cutoff date, Wood voluntarily withdrew the surviving portion of his claim for compensatory damages resulting from Brosse's alleged age discrimination as set forth in the Seventh Cause of Action and asserted pursuant to New York's Human Rights Law.

In anticipation of the close of the discovery period, Brosse informed Wood by a letter dated July 15, 1992, which was "so ordered" by this Court, that it would be moving for summary judgment by October 16, 1992. Rather than withdrawing the remaining claims made in the Third, Fifth, and Sixth Causes of Action, Wood and Pulvermacher waited for Brosse to file its motion for summary judgment before voluntarily withdrawing them.

Oral argument was held on Brosse's Rule 56 motion on November 18, 1992, at which time this Court recognized that Wood's only colorable claims were those set forth in the First and Second Causes of Action of the Complaint. In the face of this motion, Wood withdrew the Third, Fifth, and Sixth Causes of Action without contesting any aspect of the motion. Thus, at the end of pre-trial phase of this action, only the First and Second Causes of Action survived.

In December 1992, the parties reached a settlement agreement as to those two remaining claims, and a Stipulation of Dismissal was filed with this Court on January 4, 1993, dismissing the action with prejudice and on the merits. The parties also stipulated that this Court would retain jurisdiction over this matter with respect to any subsequent motions brought by Brosse for the imposition of sanctions pursuant to Rule 11.[2]

Brosse filed this motion on January 22, 1993. Oral argument was heard on February 3, 1993, and the motion is considered submitted as of that date.

### Discussion

**I. *The Legal Standards For Awarding Costs And Imposing Sanctions For Asserting Frivolous Claims And Acting In Bad Faith***

**A. *Rule 11***

The familiar prescriptions of Rule 11 require a federal court to impose sanctions against an attorney or party who signs a

---

**1.** As was noted in the Opinion, the Complaint erroneously contains two fourth causes of action. *See* 788 F.Supp. at 774. Again, for the sake of clarity, the misnumbered second fourth, fifth, sixth and seventh causes of action will be referred to as the Fifth, Sixth, Seventh and Eighth Causes of Action, respectively.

**2.** The Court recognizes that although Rule 11 is explicitly mentioned in the Stipulation, this does not limit the theory upon which it can bring the present motion.

pleading, motion, or other paper, in violation of the requirement that the signer certifies:

> to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P., Rule 11.

> In the event that this Rule is violated: the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

*Id.*

■ The Second Circuit has defined the standard to be applied in determining whether sanctions should be imposed for a violation of Rule 11:

> Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. Simply put, subjective good faith no longer provides the safe harbor it once did.... [A] showing of subjective bad faith is no longer required to trigger the sanctions imposed by the rule. Rather, sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.... *[W]here it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.*

*Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985) (*"Eastway I "*) (footnote omitted, emphasis added). Therefore, in applying Rule 11, courts must assess whether an attorney's conduct was objectively reasonable at the time he or she signed the pleading, motion, or other paper. *See International Shipping Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388 (2d Cir.), *cert. denied sub nom. Golub v. Hydra Offshore, Inc.,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *Oliveri v. Thompson,* 803 F.2d 1265, 1274–75 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Quadrozzi v. City of New York,* 127 F.R.D. 63, 79 (S.D.N.Y.1989).

The substantive requirement imposed on an attorney or party by Rule 11 is that "[p]leadings, motions, and other papers must be justifiable *at the time they are signed."* *United States v. International Bhd. of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991) (emphasis added). It follows, then, that a court must neither "allow hindsight to skew judgment" nor "countenance belated rationalizations concocted to conceal chicanery." *Id.*

Further, as this Court has previously noted, "improperly invoking subject matter jurisdiction of a federal district court is sanctionable under Rule 11." *Brignoli v. Balch, Hardy & Scheinman, Inc.,* 126 F.R.D. 462, 465 (S.D.N.Y.1989); *accord Official Publications, Inc. v. Kable News Co.,* 692 F.Supp. 239, 248 (S.D.N.Y.1988), *aff'd in part and rev'd in part,* 884 F.2d 664 (2d Cir.1989).

### B. *Section 1927*

Section 1927 empowers a federal court to require an attorney "to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred" when that attorney has "unreasonably and vexatiously" multiplied the proceedings in an action. 28 U.S.C. § 1927. The purpose of this statute is "to deter unnecessary delays in litigation," and "an award made under § 1927 must be supported by a finding of bad faith." *Oliveri,* 803 F.2d at 1273.

■ Bad faith is the key element in the imposition of § 1927 sanctions, *see Interna-*

*tional Bhd.,* 948 F.2d at 1345; *McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 23 (2d Cir.1990), and the Second Circuit has repeatedly held that:

> an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.

*Oliveri,* 803 F.2d at 1273; *accord International Bhd.,* 948 F.2d at 1345.

■ In contrast to sanctions imposed under Rule 11, the sanctioning mechanism of § 1927 is directed exclusively at the offending attorney; § 1927 sanctions may not be imposed on clients. *See id.; Oliveri,* 803 F.2d at 1273. Additionally, while Rule 11 "does not impose a continuing obligation on the signer to correct or withdraw papers previously filed," *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1470 (2d Cir.1988), *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989); *Oliveri,* 803 F.2d at 1274, § 1927 does impose just such a continuing obligation throughout the course of the litigation "to avoid dilatory tactics," *International Bhd.,* 948 F.2d at 1345.

#### C. *The Inherent Powers of the Court*

■ A court has, as part of its inherent powers, the ability to impose sanctions for improper conduct. *See id.* The Supreme Court has located this power in the court's very nature and in its need to be able "to manage [its] own affairs as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* — U.S. —, —, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)).

■ An aspect of this inherent power is the court's ability to assess costs and attorneys' fees against either the client or his attorney, *see International Bhd.,* 948 F.2d at 1345, when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258–59, 95 S.Ct.

1612, 1622, 44 L.Ed.2d 141 (1975) (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). Such sanctions turn on how the parties conduct themselves during the course of litigating the action rather than on which party wins. *See Chambers,* — U.S. at —, 111 S.Ct. at 2137.

■ The scope of the court's inherent power to sanction extends from the commencement of an action and on through its continuance in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Oliveri,* 803 F.2d at 1272. The Supreme Court has explained that such breadth is necessary because "'bad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973).

In *Chambers,* the Supreme Court cautioned that, because of the "very potency" of a court's inherent power, this power should be exercised "with restraint and discretion." — U.S. at —, 111 S.Ct. at 2137. To circumscribe the exercise of this power with reasonable limits, the Second Circuit has "always required a particularized showing of bad faith to justify the use of the court's inherent power." *International Bhd.,* 948 F.2d at 1345.

> [W]e have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts.

*Oliveri,* 803 F.2d at 1272 (citations and internal quotations omitted).

#### II. *Rule 11 Sanctions Are Warranted*

■ Pulvermacher and Wood are subject to Rule 11 sanctions for bringing the frivolous claims set forth in the Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action of the Complaint, and for improperly invoking the subject matter jurisdiction of the Court. However, Pulvermacher is not subject to § 1927 sanctions for maintaining the

Third, Fifth, Sixth, and Seventh Causes of Action.

### A. *Sanctions Must Be Imposed Against Wood And Pulvermacher For Their Failure To Comply With Rule 11*

Wood and Pulvermacher have failed to demonstrate that the reasonable inquiry required by Rule 11 was undertaken by them at the time that the Complaint was filed and this action was commenced.

#### 1. *Fourth Cause Of Action: Tortious Interference With Contract*

With regard to the Fourth Cause of Action, the Opinion held that "[s]uch a claim ... simply cannot be brought against one of the parties to the contract at issue by one of the other parties." 788 F.Supp. at 775 (citations omitted). There was no excuse for Pulvermacher to file such a claim in the face of the well-settled law of this Circuit. Not surprisingly, no attempt was made to defend the assertion of this claim against Brosse's motion to dismiss.

#### 2. *Fifth Cause Of Action: The Taking Of Wood's Car*

The Letter Agreement states that Wood would have an automobile provided to him for his out-of-town sales calls. It is readily apparent from the face of the Letter Agreement that Wood was not given the right to retain the automobile in the event his employment with Brosse were terminated, and Wood himself explicitly admitted that this was also his understanding of the automobile provision of the agreement at his deposition.

Either Pulvermacher was not aware of Wood's understanding of the terms of the agreement or he was aware of it and, nonetheless, knowingly asserted a meritless claim. In light of Pulvermacher's abrupt withdrawal of this claim when confronted with Wood's deposition testimony in Brosse's motion for summary judgment, it appears that he was not aware of Wood's understanding of the terms. However, in either case, Pulvermacher violated the provisions of Rule 11 by asserting this claim.

#### 3. *Sixth Cause of Action: Cost-Of-Living Increase*

Wood also claimed Brosse failed to make a cost-of-living adjustment to his salary in accordance with the Letter Agreement. The Complaint itself explicitly states, however, that Wood did receive salary increases each year from $84,000 in 1989 to $100,000 in 1990. Furthermore, Wood testified at his deposition that his salary in 1991 was $108,000.

As an employee of Brosse, Wood and Pulvermacher clearly had access to pay stubs and W-2 forms which would have verified the Wood's salary and led to the inevitable conclusion that there was no cause of action for unpaid cost-of-living adjustments at the time the Complaint was signed. As would be expected under these factual circumstances, Wood did not contest Brosse's motion for summary judgment on this claim.

#### 4. *Seventh Cause Of Action: Age Discrimination*

As Wood acknowledged by voluntarily withdrawing his cause of action for age discrimination, there was not sufficient evidence to make out such a claim. Moreover, at the time the Complaint was signed, there was no reasonable basis to assert such a claim. The withdrawal of this claim during discovery did not coincide with the obtaining of some definitive evidence that cast doubt on it; rather, this was a belated realization that Wood had no objective basis for this claim from the time this action was commenced.[3]

#### 5. *Eighth Cause Of Action: Emotional Damages*

In response to Brosse's Rule 12(b)(6) motion, Pulvermacher withdrew Wood's claims for emotional damages set forth in the Eighth Cause of Action. Wood had alleged

---

**3.** Pulvermacher's pattern of asserting meritless claims without making a reasonable inquiry of the relevant law is manifested in Pulvermacher's pre-Complaint letter to Brosse in which he threatens filing a Complaint in federal court and an age discrimination claim with the EEOC division of the Department of Labor. Pulvermacher asserted the latter claim on the basis of rights

Wood allegedly had under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (the "Act"). However, Brosse's counsel simply had to quote a portion of § 630 to establish definitively that Wood had no such rights because Brosse lacked the requisite number of employees to fall within the ambit of the Act. No claim was filed with the EEOC.

emotional damages in the amount of $500,000. But as was noted in the Opinion dismissing this claim, when faced with the Rule 12(b)(6) motion, "Wood admits that the Eighth Cause of Action, which alleges that he suffered emotional damages, fails to state a claim." 788 F.Supp. at 775. Pulvermacher never offered any reason for asserting this claim, nor could he articulate a theory upon which it was based. This claim was frivolously asserted from the outset of this action.

### 6. These Claims Had Absolutely No Chance Of Success

Even a cursory review of the legal propositions and factual contentions underlying the various claims set forth in the Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action of the Complaint reveals that they had "absolutely no chance of success under the existing precedents." *Eastway I*, 762 F.2d at 254. Had Pulvermacher undertaken the requisite reasonable inquiry mandated by Rule 11, the deficiencies of these claims would have been readily apparent to him.

Pulvermacher has attached copies of various computer directory listings and summary printouts of Westlaw searches to demonstrate that he had undertaken the requisite reasonable inquiry to defeat Brosse's Rule 11 motion. However, Pulvermacher's claim suggests that, at the time he signed the Complaint, he was asserting claims on behalf of Wood that he knew had absolutely no chance of success under the existing precedents.

Therefore, Wood and Pulvermacher were in violation of Rule 11 in asserting these claims at the time this action was commenced and sanctions will be imposed against them both.

### 7. Improperly Invoking This Court's Jurisdiction

The jurisdictional amount requirement of § 1332 states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of the interest and costs." 28 U.S.C. § 1332(a). Given that the only colorable claims brought by Wood were those set forth in the First and Second Causes of Action of the Complaint, the damages asserted in those claims constitute the sole basis of satisfying the jurisdiction amount requirement of § 1332.

On his First Cause of Action for severance pay, Wood sought at most $27,000 in damages from Brosse; on his Second Cause of Action for vacation pay, he sought $2,672.10. The combined total of damages claimed by Wood falls far short of the required jurisdictional amount to give rise to § 1332 subject matter jurisdiction. Therefore, Wood and Pulvermacher improperly invoked the subject matter jurisdiction of this Court by bringing this action and are subject to sanctions under Rule 11. *See Brignoli*, 126 F.R.D. at 465.

### B. Section 1927 Sanctions Are Inappropriate

On the present record there is an insufficient showing that Pulvermacher's maintaining the Third, Fifth, and Sixth Causes of Action was "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose," *Oliveri*, 803 F.2d at 1273, to trigger the sanctioning mechanism of 28 U.S.C. § 1927. Therefore, such sanctions are inappropriate and will not be imposed against Pulvermacher.

### C. There Is No Need To Invoke The Inherent Sanctioning Power Of The Court

In light of the imposition of Rule 11 sanctions and the finding that Pulvermacher did not act in the requisite bad faith to trigger § 1927 sanctions, there is no need for this Court to consider imposing sanctions pursuant to its inherent power.

### III. The Sanction Imposed

This Court has the discretion of fashioning an appropriate sanction for a Rule 11 violation. The critical consideration in exercising this discretion is the fact that the purpose of the sanctioning mechanism of Rule 11 "is not reimbursement but 'sanction.'" *Pavelic & LeFlore*, 493 U.S. at 126, 110 S.Ct. at 460; *see also Eastway Constr. Corp. v. City of New York*, 821 F.2d 121, 125

(2d Cir.) ("*Eastway II* ") (Pratt, J., dissenting) (the plain language of Rule 11 "establishes that an appropriate 'sanction' and 'a reasonable attorney's fee' are not synonymous"), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). The typical sanction, however, is the payment of the other side's reasonable attorney's fees which were incurred as a result of the improper filing. *See Eastway II,* 821 F.2d at 123. In any event, the sanction should not exceed the amount required to achieve the desired result, to wit, the minimum that will serve to reimburse the party adversely affected by the Rule 11 violation and deter further proscribed conduct. *See Id.; United States v. Brennan,* 629 F.Supp. 283, 307 (E.D.N.Y.), *aff'd,* 798 F.2d 581 (2d Cir.1986), *cert. denied,* 490 U.S. 1022, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989).

█ To justify the award of court-ordered attorney's fees and expenses, the party seeking such an award must provide the Court with "contemporaneous time and expense records specifying, for each attorney performing work on a matter, the date, the hours expended, and the nature of the work done." *Durant v. Traditional Inv., Ltd.,* 135 F.R.D. 42, 50 (S.D.N.Y.1991); *see also New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir. 1983). Fees and expenses must be necessary and reasonable. *See Nemeroff v. Abelson,* 94 F.R.D. 136, 146 (S.D.N.Y.1982), *aff'd,* 704 F.2d 652 (2d Cir.1983).

To date, Brosse has incurred attorney's fees and expenses defending this action in excess of $98,000. These fees and expenses are set forth in itemized services bills spanning the life of this action.

█ Wood offers three objections to the reasonableness of the expenditures reflected in the billing statements Brosse furnished in support of this motion: first, the expenses incurred in taking various depositions were unnecessary insofar as they were ostensibly conducted to provide information for defenses that were never asserted by Brosse; second, the expenses for messenger and miscellaneous charges are unreasonable; and third, the method of calculating the bill employed by Brosse's counsel in quarter of

an hour units rather than tenth of an hour units is unreasonable and inappropriate. None of these objections is compelling.

The first objection reduces to the untenable claim that Brosse and its counsel were too thorough in defending against this action. Wood criticizes Brosse for deposing the women who were allegedly sexually harassed by Wood. These depositions were clearly relevant for a defense against the claim for wrongful termination in response to Wood's allegations of age discrimination and breach of contract. In fact, Brosse's Answer contains two affirmative defenses alleging that it had proper grounds to discharge Wood. Furthermore, this Court agreed with Brosse that the depositions should go forward in light of the claims that Wood continued to maintain.

Wood contends that the request to depose his wife was unreasonable and harassing in nature. However, Brosse only asked for her deposition when Wood claimed during his own deposition that he did not have any knowledge regarding how much he earned. He stated that his wife was the only one who could testify on his behalf with regard to these matters. In light of Wood's testimony, Mrs. Wood had relevant knowledge of the issues in this action, and, therefore, because she was a potential witness, her deposition was sought for that proper purpose. When Wood refused to produce her at trial, the matter was easily resolved by this Court ruling that her deposition could be avoided only on the condition that her testimony or any information or documents obtained from her would not be offered at trial.

This Court finds that the general method of calculating attorney's fees employed by Brosse counsel is not unreasonable *per se,* and notes the failure of Wood to provide any authority for the contrary assertion. Further, the messenger and miscellaneous fees are not so extreme as to be deemed unreasonable.

█ At the same time it is important to note that Wood did assert two colorable claims for which he received compensation from Brosse under the terms of their Settlement Agreement. Therefore, rather than

separating out the fees and costs incurred by Brosse as a result of Wood's frivolous claims and those incurred defending against his legitimate claims and awarding the lodestar amount, *see Eastway II*, 821 F.2d at 122 ("lodestar amount need not be routinely awarded"), considerations of justice and the position of the parties mandate the imposition of the lesser sanctions set forth below.

For violating Rule 11 by alleging the frivolous claims set forth in the Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action of the Complaint and improperly invoking the subject matter jurisdiction of this Court, an award of $1,500 is an appropriate and reasonable amount to serve the intended deterrent purpose of the sanctioning mechanism of Rule 11 and to partially compensate Brosse for the costs and attorney's fees it has incurred as a result of Pulvermacher and Wood's conduct in asserting these claims in the Complaint.

This sanction is imposed against Wood and Pulvermacher, jointly and severally. *See Ultracashmere House, Ltd. v. Nordstom, Inc.*, 123 F.R.D. 435, 437 (S.D.N.Y.1988). In imposing this sanction on both Wood and Pulvermacher, the Court finds that both of them were culpable in violating Rule 11. *See Calloway*, 854 F.2d at 1474–75; *Eastway Constr. Corp. v. City of New York*, 637 F.Supp. 558, 569 (E.D.N.Y.1986), *aff'd in part, rev'd in part on other grounds, and remanded, Eastway II*, 821 F.2d 121, *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

The record establishes that Wood allowed Pulvermacher to sign and file the Complaint alleging the claims set forth in the Fifth and Sixth Causes of Action when he knew those claims were not well grounded in fact, while Pulvermacher asserted the Fourth, Seventh, and Eighth Causes of Action when none of them was warranted either by existing law or a good faith argument for the extension or reversal of existing law. This amount also includes the sanction mandated by Pulvermacher's improper invocation of this Court's subject matter jurisdiction over this action.

### Conclusion

For the reasons set forth above, Defendant Brosse's motion for an order imposing the aforementioned sanctions pursuant to Rule 11 against Wood and Pulvermacher, jointly and severally, is granted and the total amount of $1,500 is to be paid to Brosse.

It is so ordered.