2 F.3d 476
 26 Fed.R.Serv.3d 802
 Gabriel LEVINE, Plaintiff,
Leon J. Greenspan, Appellant.
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the
New Connecticut Bank and Trust Company, N.A.; the
Connecticut Bank and Trust Company, N.A.; Advest,
Incorporated; and Charles Badain, Defendants,
Samuel Messina, Defendant-Appellee.
 No. 1628, Docket 93-6053.
 United States Court of Appeals,
Second Circuit.
 Argued June 23, 1993.
Decided Aug. 18, 1993.
 
 Michael E. Greenspan, White Plains, NY (Leon J. Greenspan, Greenspan & Greenspan, White Plains, NY, of counsel), for appellant.
 Eric Watt Wiechmann, Hartford, CT (William H. Narwold, David D. Legere, Cummings & Lockwood, Hartford, CT, of counsel), for defendant-appellee.
 Before: NEWMAN, Chief Judge, VAN GRAAFEILAND and ALTIMARI, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Leon J. Greenspan, attorney for plaintiff Gabriel Levine, appeals from an order of the United States District Court for the District of Connecticut (Daly, J.) approving a magistrate judge's imposition of sanctions totalling $31,652.50 for Greenspan's violation of Fed.R.Civ.P. 11. For the reasons that follow, we affirm.
 
 
 2
 The instant case involves the alleged wrongful transfer and conversion of 33,000 shares of IBM common stock owned by Levine. The stock, which was held by Advest, Inc., with whom Levine's broker, Charles Badain, was associated, was pledged by Levine to secure a line of credit from Connecticut Bank & Trust Co. ("CBT"). At Levine's written request, allegedly procured by fraud, possession of the securities was transferred to PaineWebber, Inc. when Badain left the employ of Advest. After the 1987 stock market decline, PaineWebber sold the stock, apparently to cover a margin call on Levine's account.
 
 
 3
 In July 1990, two years after Levine had commenced litigation by suing CBT, Greenspan deposed Badain and also Samuel Messina, who had been one of Badain's supervisors at Advest's Rochester, New York office. In his capacity as a branch manager at the Rochester office, Messina had signed a form agreeing to hold the securities on behalf of CBT. Messina's deposition revealed that he was a native and life-long resident of Rochester, and that he had never conducted business in Connecticut.
 
 
 4
 Nevertheless, on October 1, 1990, Greenspan filed an amended complaint, which added Messina as a party defendant and alleged in pertinent part that:
 
 
 5
 5. At all times hereinafter mentioned or material, defendant SAMUEL MESSINA ("MESSINA")') was an employee of ADVEST in Rochester, New York, and as such, in his capacity of branch manager, regularly did and solicited business in Hartford, Connecticut.
 
 
 6
 6. BADAIN and MESSINA entered into and authorized the agreement between CBT and ADVEST for ADVEST to hold the IBM stock as collateral for the benefit of CBT and LEVINE in Connecticut as hereinafter alleged and wrongfully permitted the stock to be transferred to [PaineWebber]; and thus committed tortious acts outside the State of Connecticut causing injury to a person or property within the state while regularly doing and soliciting business in the state, and deriving substantial revenue from within the state, and are thus subject to the jurisdiction of this Court....
 
 
 7
 Messina moved to dismiss the complaint against him for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2). In opposition to Messina's motion, Greenspan filed his own affidavit containing allegations, the substance of which was that Messina had conspired with Badain to both secure possession of the collateral and wrongfully transfer it to PaineWebber. Although the affidavit stated that Greenspan was "familiar with all of the facts and circumstances pertaining thereto," it contained no factual support for these allegations.
 
 
 8
 When Messina then subpoenaed Greenspan for deposition, Greenspan withdrew his affidavit and substituted a virtually identical affidavit from Levine, the contents of which were stated to be "upon information and belief based upon the discovery and investigation conducted on my behalf." This affidavit substantially contradicted in many material respects Levine's sworn testimony given at a prior deposition. For example, Levine testified that he didn't know whether Messina was involved in the transfer of his accounts to PaineWebber and he had no facts to indicate that Messina was involved. Levine also said that he had no facts indicating the existence of a conspiracy between Messina and Badain, that he personally had no contact with Messina relative to his account, and that Messina had never visited him in Connecticut.
 
 
 9
 On May 28, 1991, Magistrate Judge F. Owen Eagan made recommended rulings on three motions pending before him. 136 F.R.D. 544. The first was Messina's motion to dismiss for lack of personal jurisdiction; the second was CBT's motion for partial relief from a stay; the third was Levine's motion to sever his claim against the FDIC from his claims against the other defendants. The Magistrate Judge recommended that the first two motions be granted and that the third be denied. On July 12, 1991, the district court issued a six page "Ruling on Plaintiff's Objections" in which all of plaintiff's objections were overruled and the Magistrate Judge's recommended rulings were "AFFIRMED, ADOPTEDTED and RATIFIED."' This document was listed on the Clerk's docket as follows:
 
 
 10
 RULING on Pltf's Objections: Accordingly, these objections are overruled as well and the magistrate judge's recommended rulings on these motions are also affirmed adopted and ratified. DALY J., cc counsel. fdp M 7/12/91
 
 
 11
 No other pertinent document was filed. Specifically, no partial judgment was entered pursuant to Fed.R.Civ.P. 54(b) and 58.
 
 
 12
 On February 28, 1992, Messina moved for sanctions and attorney's fees under Fed.R.Civ.P. 11, Fed.R.Civ.P. 26(g), Fed.R.Civ.P. 31, 28 U.S.C. Sec. 1927 and the district court's inherent power. On August 19, 1992, Magistrate Judge Eagan recommended that the motion be granted and sanctions imposed, finding:
 
 
 13
 (1) that the plaintiff's claim that this court could properly assert personal jurisdiction over Messina was not well grounded in fact; (2) that plaintiff's counsel ignored facts revealed through reasonable inquiry, particularly the deposition of Messina and admissions of his own client; and (3) that counsel perpetuated his misconduct through the filing of numerous memoranda well after his errors were revealed to him. In addition, the court finds that plaintiff's counsel caused the plaintiff himself, through his affidavit, to execute a document which contained allegations not well grounded in fact. This court does not favor the sanctioning of an attorney, but the misconduct perpetrated in this case is so uncommon to the everyday standards of practice before this court that the conduct of Mr. Greenspan cannot be condoned.
 
 
 14
 On January 28, 1993, the district court "APPROVED, AFFIRMED,D, and ADOPTED"' the recommended ruling.
 
 
 15
 Greenspan contends at the outset that the district court lacked jurisdiction to consider the motion for sanctions, arguing that Messina's motion was untimely since it was filed "some seven months and sixteen days after the Judge Daly affirmance of Judge Eagan." This argument is without merit. "Rule 11 does not establish a deadline for the imposition of sanctions...." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 398, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990). The time limit for filing Rule 11 motions either is governed by local rule, see id., or lies within the discretion of the trial judge, see Fed.R.Civ.P. 11 advisory committee note. District of Connecticut Local Rule 9(f) provides that "[m]otions for attorneys' fees or sanctions shall be filed with the Clerk and served on opposing parties within 30 days of the entry of judgment." Messina's motion was timely under Local Rule 9(f), since no judgment has yet been entered.
 
 
 16
 The district court's above-described "Ruling on Plaintiff's Objections" partakes more of an order than a judgment. However, although an appealable order may in some cases be treated as a judgment, see Fed.R.Civ.P. 54(a), regardless of nomenclature, the "Ruling" in the instant case cannot be used as the starting point for the limitation period contained in Local Rule 9(f). To accomplish this purpose, there must be a document, separate and apart from an opinion. "Although a one-sentence order denying a motion satisfies the separate-document requirement, an order that is part of a district court opinion or memorandum does not." RR Village Ass'n, Inc. v. Denver Sewer Corp., 826 F.2d 1197, 1201 (2d Cir.1987) (citations omitted); see also United States v. Indrelunas, 411 U.S. 216, 219-22, 93 S.Ct. 1562, 1563-65, 36 L.Ed.2d 202 (1973); Kanematsu-Gosho, Ltd. v. M/T Messiniaki Aigli, 805 F.2d 47 (2d Cir.1986); Cloyd v. Richardson, 510 F.2d 485, 486 (6th Cir.1975); Fed.R.Civ.P. 58.
 
 
 17
 Greenspan next contends that the district court erred in approving the imposition of sanctions. This argument also is meritless. We will reverse an award of sanctions only when there has been an abuse of discretion. Cooter & Gell, supra, 496 U.S. at 405, 110 S.Ct. at 2460. There was no abuse of discretion here. Attorney Greenspan's blatant disregard of the facts amply warranted the imposition of sanctions. By signing the Second Amended Complaint, affidavit and memoranda, Greenspan certified that "to the best of [his] knowledge, information, and belief formed after reasonable inquiry [they were] well grounded in fact." Fed.R.Civ.P. 11. These documents clearly were not grounded in fact. They were contradicted not only by Messina's deposition, but also by the admissions of Greenspan's own client, Levine. When pressed, Greenspan could not substantiate the allegations contained therein. As the Magistrate Judge's ruling on sanctions correctly stated, "[t]he creativity of an attorney may not transcend the facts of a given case; counsel in his attempts at creativity concocted 'facts' that were not well grounded, and therefore exceeded the bounds of conduct acceptable of members of the bar of this court as well as those incorporated in Fed.R.Civ.P. 11."
 
 
 18
 Greenspan argues finally that, at most, his legal argument for personal jurisdiction over Messina was "a position which is 'merely "losing" ' " and not "one which is both 'losing and sanctionable.' " See Securities Indus. Ass'n v. Clarke, 898 F.2d 318, 321 (2d Cir.1990) (quoting Motown Productions, Inc. v. Cacomm, Inc., 849 F.2d 781, 785 (2d Cir.1988)). However, the merit vel non of Greenspan's legal argument was not the decisive criterion in the district court's decision on sanctions. On the contrary, the sanctions were predicated upon Greenspan's baseless factual allegations. For that reason, Greenspan's extended discussion of Connecticut personal jurisdiction law is largely irrelevant. Also irrelevant are his repeated citations to Mareno v. Rowe, 910 F.2d 1043 (2d Cir.1990), cert. denied, 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991), in which we reversed an award of sanctions predicated upon an erroneous but non-frivolous legal interpretation of New York's long arm statute.
 
 
 19
 In sum, since Greenspan's challenges to the sanctions imposed are wholly without merit, we affirm.