**Walter GRAY, Plaintiff,**

v.

**Thomas P. MILLEA; Calvin Nephew; David Sager; International Brotherhood of Electrical Workers Local Union 910; International Brotherhood of Electrical Workers, Defendants.**

**94–CV–518.**

United States District Court,
N.D. New York.

July 31, 1995.

---

Thomas R. Snow, Albany, NY, for plaintiff.

Blitman, King Law Firm, Syracuse, NY (Donald D. Oliver, of counsel), Sherman, Dunn Law Firm, Washington, DC (Victoria L. Bor, of counsel), for defendants.

## MEMORANDUM DECISION & ORDER

McAVOY, Chief Judge.

The Court heard oral argument on defendants' motions for summary judgment on May 26, 1995 at Binghamton, New York. In a decision issued from the bench on that date the Court, pursuant to Fed.R.Civ.P. 56, granted defendants' Motion for Summary Judgment as to all claims in plaintiff's Complaint and his Complaint was dismissed with prejudice. At that time all defendants also moved under Fed.R.Civ.P. 11 for sanctions against plaintiff and his attorney. The Court first reserved on that motion for sanctions and then ordered defendants to submit supplementary affidavits outlining and verifying for the Court all the expenses and reasonable attorney's fees incurred by the defendants from March 14, 1995,[1] up to and inclusive of the Motions heard on May 26, 1995.

Upon consideration of those supplementary affidavits along with plaintiff's and defendants' affidavits and memoranda of law on both the issue of sanctions and the Motion for Summary Judgment, the Court now sanctions plaintiff's attorney for initiating and maintaining claims with no basis in fact or law in the amount of $21,665.18.

## I. BACKGROUND

### a. Facts:

**Plaintiff Walter Gray** was the Business Manager, Financial Secretary, and administrator of the health and welfare fund of **defendant Local 781, International Broth-**

---

**1.** As discussed *infra,* on that date (which was after the close of discovery) defendants prepared and forwarded to plaintiff's attorney a letter which outlined in great detail the numerous fac-

tual and legal infirmities in plaintiff's various positions and importuned plaintiff to withdraw his suit prior to the filing of motions or risk sanctions.

erhood of Electrical Workers ("IBEW") from June 1980 until his resignation in June, 1990.

**Defendant Calvin Nephew** was the elected president of the local at all relevant times. In August, 1989, plaintiff Gray hired **defendant Thomas Millea** as a full-time local organizer. Gray, Millea and Marie Belli, were the local's only full time employees, sharing a one-room office in Plattsburgh. In early 1990 Belli showed Millea a blue cross bill which reflected that the Local was paying premiums for ineligible individuals. There also arose questions concerning plaintiff's practice of collecting dues in cash and failing to promptly or regularly deposit the cash. After Gray failed to rectify the situation over a period of months, Millea reported the matter to Nephew and the Local's trustees. On May 11, 1990 at a meeting of all concerned and the local trustees plaintiff was removed as fund administrator and defendant Millea succeeded him. At that time the Local was $160,000 in arrears to Blue Cross and resolving this led to drastic cutbacks in member coverage.

**Defendant David Sager** is an International Representative for **defendant International IBEW**. One of his functions is to service IBEW Local 781 on the International's behalf. Sager travelled to Plattsburgh and met with the parties. As a result of these meetings, on May 22, 1990, plaintiff Gray resigned as business and financial secretary of the Local. Defendant Millea was appointed to serve out Gray's term. Sager continued to advise Millea on how to restore the Local to fiscal health and recommended an independent audit of the Local's general fund. An independent auditor was hired and in February, 1991, he reported to the Local's Executive Board a $14,000 discrepancy between dues payments and money deposited during Gray's tenure as well as $9,000 in charges on the Union's mastercard for which there were no vouchers or receipts.

Plaintiff claimed he was given no opportunity to explain the discrepancies. He also claimed his method (or lack of method) of recordkeeping and cash disbursements was common knowledge to all defendants, including the independent auditor, who was formerly the Local's accountant. The defendants ultimately established that plaintiff was repeatedly contacted and asked to clarify the situation and in late June of 1991, plaintiff finally produced receipts documenting $70.00 in cash expenditures. Plaintiff disingenuously represented to the Court that a fire at the Local destroyed many of the relevant records: in fact, however, the fire occurred on January 14, 1992, well after the events in question.

Federal law requires the Local to annually file a financial reporting form (an "LM–2") with the U.S. Department of Labor. Millea filed the LM–2 for July 1, 1990–June 30, 1991, in September of 1991 and therein reported the loss of funds. At that time Sager advised Millea that the Local could recoup the loss by filing a claim with their bonding company. He filed the claim and the bonding company reimbursed the Local $14,-737.52. Also at this time Ruby Davis, a U.S. Labor Dept. investigator, contacted the defendants pursuant to an investigation triggered by the LM–2. All defendants met with Davis and told her what they knew. Plaintiff likewise met with Davis several times. Davis referred her completed investigation to the Department of Justice ("DOJ"), and on April 9, 1993, DOJ indicted plaintiff for embezzlement. DOJ withdrew the indictment on July 9, 1993, explaining that after further investigation the prosecution was not viable: DOJ squarely charged the delay in developing all the facts and evidence to the actions of plaintiff Gray.

Plaintiff brought this action (initially filed in New York State Supreme Court, Clinton County and removed by the defendants under the Labor Management Relations Act) under New York State tort law for 1) Defamation; 2) Malicious Prosecution; 3) Breach of Contract; 4) Abuse of Process; and 5) Conspiracy.

**b. Defendant's Motion for Summary Judgment.**

Summary judgment was granted in favor of the defendants as against all of plaintiff's claims.

**(1). Plaintiff's Defamation Claims:**

As to plaintiff's claims sounding in defamation, the Court found that notwithstanding

that all the parties to this action had been deposed, plaintiff had failed to point to any defamatory statement by any of these defendants such as would allow these claims to survive summary judgment. As to defendants Nephew and Sager it was clear that no evidence had been presented that they made false statements about plaintiff: indeed at his own deposition plaintiff indicated his belief that neither Nephew nor Sager had made *any* false statements about him. (Gray Dep. at 47–60).

Neither did plaintiff in his affidavit or memorandum of law in opposition expressly point to any single defamatory statement made by defendant Millea. The Court noted in that regard that plaintiff's attorney had failed to file an affidavit with his memorandum of law. It appeared that plaintiff's attorney's only theory was that based on the foregoing events one of the defendants *must* have said something defamatory to someone: of course such a posture is wholly inappropriate on a post-discovery motion for summary judgment.

More importantly in regard to the issue of sanctions, the absolutely undisputed chronology[2] of events plaintiff points to compels the conclusion that, even under plaintiff's "some defendant must have said something defamatory to someone" theory, any such hypothetical defamatory statement must have been made, at the latest, before June 18, 1992. New York provides a one year statute of limitations for libel and slander. *See* N.Y.Civ.Prac.Law § 215 Subd. 3 (McKinney's 1990 & 1995 Supp.); *Stockley v. AT & T Information Systems, Inc.,* 687 F.Supp. 764, 767 (E.D.N.Y.1988). Plaintiff's complaint was filed on March 1, 1994. It follows then that only defamations uttered on or after March 1, 1993 would fall within the one year limitations period. As such, the last possible publication date of the defamatory

material upon which plaintiff sought to rely was well outside the statute of limitations.[3]

On March 13, 1995, defendants' attorneys prepared and sent plaintiff's attorney a letter following up earlier discussions and pointing out "as we explained both before and after the depositions, it is our position that there is absolutely no basis, in law or in fact, for your allegations against our clients. Indeed we cannot fathom how, in light of the deposition testimony, you could continue to pursue this litigation." (Oliver Aff., Ex. 1). In that letter defendants' attorney also pointed out that "even aside from the absence of any evidence that any of the defendants ever lied, your claims are entirely barred as a legal matter, both by the statute of limitations, and because any such statements would be privileged." (Oliver Aff., Ex. 1). Plaintiff never reacted to Defendants' letter. Defendants also argued their straightforward and uncontestable statute of limitations defense in their Summary Judgment Motion but again, plaintiff completely ignored that issue in his memorandum of law.

Eighty percent of plaintiff's written filings on motion addressed defamation issues. At oral argument plaintiff's attorney spent well over 90% of his allotted time arguing his defamation claims. When the Court inquired about the statute of limitations during argument on sanctions, however, plaintiff's attorney astoundingly and indisputably disingenuously reiterated his position, first maintained in his Memorandum in Opposition to Sanctions: that, in his own words, "defamation was not the gravamen of plaintiff's complaint."

**(2). Plaintiff's Claims of Malicious Prosecution:**

The elements of malicious prosecution are well settled in New York. In his claim for malicious prosecution plaintiff had to establish 1) that the defendant either commenced or continued a criminal proceeding

---

**2.** First, nothing on the face of the LM–2 itself was defamatory. That document, which was filed on September 20, 1992, merely reported the undisputed fact that the audit by Mr. Drew found a loss/shortage of funds. Second, it is undisputed that the Local's claim with the bonding company was filed in September, 1991. Third, it is undisputed that Ms. Davis' Labor Dept. investigation concluded on June 18, 1992.

**3.** The Court notes also that New York's "single publication rule" prevents plaintiff from claiming that subsequent re-use of the statements made in these contexts could somehow have brought the material within a year of his complaint. *Stockley,* 687 F.Supp. at 767–68.

against him; 2) that the proceeding terminated in his favor; 3) that there was no probable cause for the criminal proceeding; and 4) that the criminal proceeding was instituted with actual malice. *See Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991); *Broughton v. State,* 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 335 N.E.2d 310, *cert. den'd,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975); *Angel v. Kasson,* 581 F.Supp. 170, 175 & n. 9 (N.D.N.Y.1983). Furthermore, under New York law a request that the plaintiff be prosecuted is the minimum action necessary to sustain a claim under malicious prosecution. *See Raysor v. Port Authority,* 768 F.2d 34, 39 (2d Cir.1985), *cert. den'd,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986). On motion plaintiff offered no evidence that these defendants instigated or commenced a criminal proceeding against him.[4] Plaintiff also stated various claims for abuse of process in his complaint. While never withdrawn those claims were nowhere raised, supported or defended on motion and were likewise dismissed.

### (3). Plaintiff's Interference With Contract, Breach of Contract and Prima–Facie Tort Claims:

Plaintiff's legal theory regarding these various contract claims simply could not be discerned from plaintiff's memorandum of law. Nowhere were the facts of this case applied to the relevant law controlling such claims. Again the Court notes plaintiff's attorney's failure to file an affidavit.

Although plaintiff argued prima-facie tort in his memo of law, no such claim was stated in plaintiff's complaint. Furthermore, no facts in support of such a claim were argued on motion or developed in the filings: in his memorandum of law plaintiff's attorney merely stated the elements of such a claim and moved on.

Nowhere did plaintiff even clarify exactly what contract he was attempting to put at issue on his interference with contract and breach of contract claims.[5] Furthermore, the tort of interference with contract requires at minimum, proof that defendants' acts were without reasonable justification. *See Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956). Plaintiff nowhere produced evidence either showing the absence of reasonable justification or contravening defendants' overwhelming evidence of justification.

In short, the Court, after a thorough review of plaintiff's Complaint and the exhibits,

---

**4.** The LM–2 filed by the defendants nowhere contained the sort of unequivocal request that plaintiff be prosecuted required to maintain such a claim. That form, which plaintiffs had a *duty* to file with the Department of Labor, merely asserted information which defendants uncontrovertedly had reason to believe was true: that their books, at the time the LM–2 was filed, disclosed a loss or shortfall. The Court noted also that even the Department of Labor could not have unilaterally initiated plaintiff's prosecution. Labor merely forwarded their report to justice with a recommendation that Justice prosecute the matter. It was in the full discretion of justice whether or not to seek an indictment and no evidence was presented that these defendants in any way influenced that decision.

**5.** The Court could only hypothesize theories upon which these claims could have been based, none of which were legally or factually supportable: 1) if plaintiff's claims flowed from a theory that defendant Millea interfered with plaintiff's employment contract with the Local, it was defeated by the clear evidence from plaintiff's own deposition that his resignation was voluntary. (Gray Dep. at 15), and that, based on the uncon-troverted results of the audit which precipitated these events, the actions of these defendants were reasonably undertaken; 2). to the extent these claims were based on the failure of the Union to bring charges against plaintiff under the IBEW Constitution, neither the Union nor any of the individual defendants' had a duty under the Union's Constitution to bring charges against plaintiff, and, according to plaintiff's factual conclusions, had the defendants brought such charges they would have been civilly liable for having done so; 3). to the extent plaintiff's contract and fraud claims flowed from the claim filed by the Local with the bonding Company, plaintiff introduced no evidence to show that the documentation submitted with the claim, or the bonding claim itself, was manipulative, fraudulent or false as plaintiff claimed in his complaint.

In the absence of evidence of impropriety plaintiff's claims for conspiracy to commit fraud failed as well: "A lawful act done in a lawful way, no matter how damaging the result, cannot be the basis for a claim of fraudulent conspiracy, even if it was performed maliciously." *See Callahan v. Gutowski,* 111 A.D.2d 464, 488 N.Y.S.2d 519, 521 (3rd Dep't.1985).

affidavits, and the filings of the parties in reference to this motion, concluded that summary judgment had to be granted for the defendants.

## II. DISCUSSION

### a. Rule 11:

■■■ Defendants' have moved for sanctions under Fed.R.Civ.P. 11 and the inherent equitable powers of the court. As written, Rule 11 imposes an affirmative duty on the signer to make a reasonable inquiry on the viability, legally and factually, of claims made in pleadings written motions and other papers filed with the court. *Eastway Construction Corp. v. New York*, 762 F.2d 243, 253 (2d Cir.1985). In pertinent part, Rule 11(b) states:

> By presenting to the court (whether by signing, filing, submitting or later advocating) a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief formed after inquiry reasonable under the circumstances,—
>
> (2) the claims, defenses, and other *legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law* or the establishment of new law;
>
> (3) the *allegations and other factual contentions have evidentiary support;*

Fed.R.Civ.P. 11(b) (emphasis added).

■■■ The reasonableness of the inquiry is measured objectively at the time the signer signs the papers in question. *See Derechin v. State University of New York*, 963 F.2d 513, 516 (2d Cir.1992); *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1344 (2d Cir.1991). In *Knipe v. Skinner*, 19 F.3d 72 (2d Cir.1994), the Second Circuit clarified that, although the imposition of sanctions for a Rule 11 violation was mandatory under the 1983 version, the 1993 amendments provide that imposition of sanctions is now discretionary. *Knipe*, 19 F.3d at 75, 78. Furthermore, the current version of Rule 11 specifies that "[m]onetary sanctions may not be awarded against a *represented party* for a violation of subdivision (b)(2),"

Fed.R.Civ.P. 11(c)(2)(A) (emphasis added). The Notes of the Advisory Committee on Rules clarify that such sanctions for violations involving frivolous contentions of law (Rule 11(b)(2) violations) are more properly imposed solely on the party's attorneys. Fed.R.Civ.P. 11 Advisory Committee's Note, 1993 Amendment. As such, plaintiff's attorney is subject to monetary sanctions for Rule 11 violations involving frivolous contentions of law.

### b. Rule 11 Applied:

■ At bottom, plaintiff failed to point to any even arguably defamatory statement by any defendant. Furthermore, under any analysis, any conceivable defamatory statements could not have been uttered within the statute of limitations. Whatever plaintiff's attorney may have believed about his case at its inception it was clear after all the parties in this action had been deposed that his allegations and other factual contentions did not have evidentiary support and that in light of the statute of limitations, his claims were not warranted by existing law. Furthermore plaintiff never responded to defendants' statute of limitations arguments in that regard, let alone undertook a nonfrivolous argument for the extension, modification, or reversal of existing law. Finally, when questioned on his defamation claims at oral argument plaintiff's attorney affirmatively misrepresented his previously filed claims and arguments to the Court.

As demonstrated in the discussion of plaintiff's claims *infra*, none of his other claims found any evidentiary or legal support. The Court also notes the inadequacy of plaintiff's Memorandum of Law which, particularly as to the contract-related claims, bordered on the incoherent. Plaintiff's attorney's assumed failure to spontaneously and independently become aware of these failures by March 13, 1995, bespeaks at best a failure of reasonable inquiry, if not (particularly in light of his specious arguments against sanctions reiterated at oral argument) a willful disregard of the facts and law amounting to bad faith litigation.

When this conduct is further considered in light of defendants' pre-motion March 13,

1995 letter outlining point-by-point the legal and factual flaws in plaintiff's claims, the Court finds in the exercise of its discretion that plaintiff's attorney must be sanctioned. *Chemiakin v. Yefimov,* 932 F.2d 124, 126 (2d Cir.1991) (affirming sanctions where defamation complaint was time-barred, complaint did not and could not state a claim in defamation and legal analysis was extraordinarily shoddy); *Blossom v. Blackhawk Datsun, Inc.,* 120 F.R.D. 91 (S.D.Ind.1988); *see also, Levine v. FDIC,* 2 F.3d 476 (2d Cir.1993) (sanctions appropriate where plaintiff's own deposition contradicts factual allegations in pleading); Fed.R.Civ.P. 11 Advisory Committee's Note, 1993 Amendment ("[Rule 11] emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting on a position after it is no longer tenable.... A Litigant's obligations with respect to the contents of these papers ... include reaffirming to the court and advocating positions contained in these pleadings and motions after learning that they cease to have any merit.").

In light of the March 13 letter prepared by defendants' clarifying plaintiff's position, defendants' good faith request that plaintiff withdraw his claims before motions and so avoid sanctions, and the unnecessary expense borne by the defendants in prosecuting their summary judgment motion from that point onward, the Court finds "unusual circumstances" such that payment to defendants' of their attorney's fees and costs from the March 13, 1995 date of that letter is appropriate. *See* Fed.R.Civ.P. 11 Advisory Committee's Note, 1993 Amendment (under unusual circumstances the court may direct monetary payment to those injured by the violation, not to exceed expenses and attorney's fees directly and unavoidably caused by the violation).

**c. The Applicable Rates for Calculating Attorneys' Fees:**

■ The question of the appropriate rate to be used in calculating the amount of attor-

neys' fees awarded must next be determined. In general, the reasonable rate used in a determination of the amount of attorneys' fees to be awarded "should be calculated according to the prevailing rates in the community *'for similar services by lawyers of reasonably comparable skill, experience and reputation.'* " *Cefali v. Buffalo Brass Co.,* 748 F.Supp. 1011, 1018 (W.D.N.Y.1990) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058–59 (2d Cir.1989)) (emphasis in original). The Second Circuit therefore has directed that the proper rule is for the district court to "consider the prevailing rates in the district in which the court sits." *Polk v. New York State Dep't. of Correctional Servs.,* 722 F.2d 23, 25 (2d Cir.1983) (awarding attorneys' fees under Section 1988); *See also, Donnell v. United States,* 682 F.2d 240, 251 (D.C.Cir. 1982), *cert. den'd* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983).

■ The rationale for this rule lies in its simplicity and neutrality. *Donnell,* 682 F.2d at 251. It allows the district court to determine "the prevailing market rate within its jurisdiction, an inquiry about which it should develop expertise." *Id.* Further, such a rule does not work

> to any clear advantage for either those seeking attorneys' fees or those paying them. High-priced attorneys coming into a jurisdiction in which market rates are lower will have to accept those lower rates for litigation performed there. Similarly, some attorneys may receive fees based on rates higher than they normally command if those higher rates are the norm for the jurisdiction in which the suit was litigated.

*Id.* Therefore, the appropriate hourly fee to be applied in calculating an award of attorneys' fees is the prevailing rate in the district in which the suit is litigated, irrespective of the fee usually charged by the attorney.[6] Applying the prevailing market rates within

---

6. There are certain exceptions to this rule but none are relevant in the instant matter. *See, e.g., Polk,* 722 F.2d at 25, (the need for "special expertise of counsel from a distant district"); *In Re "Agent Orange" Product Liability Litigation,* 611 F.Supp. 1296, 1308 (E.D.N.Y.1985) *aff'd in* *part and rev'd in part,* 818 F.2d 226 (2d Cir.1987) ("when local counsel is unwilling to handle the case,"); *Id.* ("when a lawyer files suit in his or her home district that is properly maintainable there, and the case is transferred to the forum district") (quoting *Polk,* 722 F.2d at 25).

the Northern District of New York, the court will award attorneys' fees to defendants' attorneys based on the following hourly rates:

| Attorney | Type of Work | Hourly Rate |
|----------|--------------|-------------|
| Partner | Legal | $150 |
| | Travel | $ 75 |
| Associate | Legal | $100 |
| Paralegal | Legal | $ 50 |

Applying the above rates to the supplemental affidavits regarding expenses and reasonable attorney's fees from March 14, 1995 up to and inclusive of the motions heard May 26, 1995 the Court finds the following:

i). that defendants Thomas P. Millea, Calvin Nephew, and IBEW Local Union 910 were represented by the firm Blitman & King;

a. That Donald D. Oliver, partner, reasonably performed
45.3 hours of legal services × $150 per hour = $ 6,795.00;
plus 2 hours of travel time × $75 per hour = $ 150.00;
b. That Charles Spagnoli, associate, performed
32.2 hours of legal services × $100 per hour = $ 3,220.00;
c. That Kenneth L. Wagner, associate performed
.25 hours of legal services × $100 per hour = $ 25.00;
d. That Blitman's reasonable expenses = $ 629.51;
e. That the **TOTAL** of reasonable expenses and attorney's fees incurred by Blitman & King = **$10,819.51**

---

ii). that defendants David Sager and International Brotherhood of Electrical Workers were represented by the firm of Sherman, Dunn, Cohen, Leifer & Yellig, P.C.;

a. That Victoria L. Bor partner, reasonably performed
67.4 hours of legal services × $150 per hour = $10,110.00;
plus 3 hours of travel time × $75 per hour = $ 225.00;
b. That Nora Leyland, associate, performed
2.60 hours of legal services × $100 per hour = $ 260.00;
c. That Sherman & Dunn's reasonable expenses = $ 960.18;
e. That the **TOTAL** of reasonable expenses and attorney's fees incurred by Blitman & King = **$11,555.18**

---

iii). That the total of attorney's fees and expenses reasonably incurred by these defendants from March 14, 1995, up to and inclusive of the Motions heard on May 26, 1995 was $ 22,374.69.

Workers, in the amount of $11,555.18, for a total of $ 22,374.69.

**IT IS SO ORDERED.**

## III. CONCLUSION

For all the foregoing reasons, then, plaintiff's attorney Thomas R. Snow, Esq., is hereby ORDERED to pay the reasonable attorney's fees and expenses of defendants Thomas P. Millea, Calvin Nephew, and IBEW Local Union 910, in the amount of $10,819.51, and the reasonable attorney's fees and expenses of defendants David Sager and International Brotherhood of Electrical