Nellie HOWARD, Plaintiff,

v.

**KLYNVELD PEAT MARWICK GOERDELER, a general partnership, and William Hannon and Jon Madonna, individually and as representative of the class of all partners and principals in Defendant Klynveld Peat Marwick Goerdeler during the period January 25, 1993 through January 31, 1995, Defendants.**

No. 96 Civ. 5304(SWK).

United States District Court,
S.D. New York.

Sept. 11, 1997.

Miguel Rodriguez, New York City, for Nellie Howard.

Richard L. Klein, Willkie, Farr & Gallagher, New York City, for Klynveld Peat Marwick Goerdeler.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this case asserting employment discrimination on the basis of gender and race, defendant Klynveld Peat Marwick Goerdeler ("Klynveld") moves, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), 12(b)(6) and 9(b) to dismiss the complaint of Nellie Howard ("Howard") for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficiency of service of process, failure to state a claim upon which relief may be granted and failure to plead fraud with particularity. In addition, defendants Jon Madonna ("Madonna") and William Hannon ("Hannon") move to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6) based on improper service of process and the duplicative nature of the claims in this action. Alternatively, Madonna and Hannon seek a stay pending arbitration of Howard's claims in the instant action and/or in a related action. Finally, Klynveld seeks sanctions pursuant to Federal Rule of Civil Procedure 11 and all defendants seek sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent powers. For the reasons set forth below, Klynveld's motion to dismiss for lack of personal jurisdiction is granted. Madonna and Hannon's motion to dismiss because of the duplicative nature of this action is granted. In addition, Klynveld's motion for sanctions pursuant to Rule 11 is granted, and the motions for sanctions pursuant to Section 1927 and the Court's inherent powers are denied.

## BACKGROUND

In or about March 1993, Howard interviewed for a position in KPMG Peat Marwick's ("Peat Marwick") New York City office. On or about August 6, 1993, Peat Marwick sent Howard a letter in which they offered her a job and described her compensation benefits, her job title and company policies (the "Offer Letter"). On September 20, 1993, Howard commenced employment with Peat Marwick in New York City. On or about November 4, 1993, Howard received a Senior Manager's Agreement dated September 20, 1993 (the "Agreement"), which, like the Offer Letter, described the terms of her employment. The Agreement also contained other clauses not mentioned in the Offer Letter, including, inter alia, an employment at will provision and an arbitration provision.

The arbitration clause provides:

Any claim or controversy between the parties arising out of or relating to this Agreement or the breach thereof, or in any way related to the terms and conditions of the employment of Senior Manager by Peat Marwick, shall be settled by arbitration under the rules of the American Arbitration Association and the laws of the State of New York.

Agreement, annexed to the affidavit of Deborah A. Keller, dated Nov. 12, 1996, as Exh. "B," at ¶ 11. Sometime in early February 1994, Howard signed and returned the Agreement to Peat Marwick.[1]

On or about October 25, 1994, Howard's employment with Peat Marwick was terminated. According to Howard, Peat Marwick's Chicago office subsequently offered her an employment position. Howard claims that this offer was withdrawn, however, after representatives of Peat Marwick's Chicago office spoke with her supervisors from the New York office.

---

1. In August 1994, Peat Marwick became a limited liability partnership, and amended its Articles of Partnership to suffix "LLP" to its name. The partnership was not dissolved and continued without interruption with the same partners, principals, employees, assets, rights, obligations, liabilities and operations as maintained prior to the change. Thus, Peat Marwick LLP is in all respects the successor in interest to Peat Marwick.

On or about February 7, 1996, Howard filed a complaint in this Court against Peat Marwick and her immediate supervisor, Kathy Anderson ("Anderson"), alleging gender and race discrimination, intentional and negligent infliction of emotional distress, negligent supervision, fraud and misrepresentation (the "February 1996 Action"). On April 23, 1996, defendants in the February 1996 Action filed a motion to stay pending arbitration. On October 16, 1996, this Court granted defendants' motion to stay the February 1996 Action pending arbitration of Howard's claims. *See* Order in *Howard v. Anderson and KPMG Peat Marwick,* No. 96 Civ. 919, dated Oct. 16, 1996 (the "October 1996 Order"), at 11–15.

On or about July 17, 1996, while the aforementioned motion was pending, Howard filed the instant action against Klynveld, a Netherlands-based association in the business of setting standards for accounting firms, and Hannon and Madonna, partners of Peat Marwick, alleging claims virtually identical to those alleged in the February 1996 Action. Specifically, Howard alleges the following causes of action: (1) wrongful termination in violation of public policy; (2) fraudulent misrepresentation; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) negligent supervision; (6) race and gender discrimination in violation of the Civil Rights Act of 1866, the New York State Human Rights Law and the New York City Human Rights Law; and (7) race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964.

## DISCUSSION

### I. Service of Process

■ Pursuant to Federal Rule of Civil Procedure 12(b)(5), a complaint may be dismissed for insufficient service of process. Once a defendant challenges the sufficiency of service of process, "the burden of proof is on the plaintiff to show the adequacy of service." *Blue Ocean Lines v. Universal Process Equip., Inc.,* No. 93 Civ. 1722, 1993 WL 403961, at \*4 (S.D.N.Y. Oct.7, 1993). Conclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served with process. *Sassower v. City of White Plains,* No. 89 Civ. 1267, 1993 WL 378862, at \*7 (S.D.N.Y. Sept. 24, 1993).

Under Federal Rule of Civil Procedure 4(m), the summons and complaint must be served on the defendants within 120 days of plaintiff's filing them. "Among federal courts, there is virtual unanimity that dismissal is mandatory if a defendant is not served within 120 days, unless the plaintiff can show good cause for delay.'" *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Sun,* No. 93 Civ. 7170, 1994 WL 463009, at \*2 (S.D.N.Y. Aug.25, 1994) (quoting *Geiger v. Allen,* 850 F.2d 330, 332 (7th Cir.1988)). In general, "good cause" exists only in exceptional circumstances where the failure to serve process in a timely manner results from circumstances beyond the plaintiff's control. *Id.* An attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause for the purposes of Rule 4(m). *McGregor v. United States,* 933 F.2d 156, 160 (2d Cir.1991).

### A. Hannon

■ Howard does not dispute that Hannon has not been properly served in this action. In fact, Howard concedes that she "has never attempted to serve defendant Hannon," because she is "unaware of his address and has been unable to locate him." Pl.'s Mem. of Law, dated Dec. 24, 1996, at 34. Moreover, Howard does not appear to argue that good cause exists for her failure to serve Hannon.[2] Rather, Howard contends that Hannon has waived any defenses as to insufficiency of service of process through his participation in these proceedings.

The defense of improper service may be waived "by failure [to] assert [it] seasonably, by formal submission in a cause, or by sub-

---

**2.** In any event, Howard's claim that she is "unable to locate [Hannon]" falls far short of establishing good cause for her failure to serve Hannon because she does not claim to have made any reasonable efforts to locate Hannon. *See Timmons v. New York State Dep't of Correctional Servs.,* No. 89 Civ. 6400, 1993 WL 118517, at \*4 (S.D.N.Y. April 13, 1993) (no finding of good cause where plaintiff failed to take any steps to locate defendant during a three month period).

mission through conduct." *Federal Home Loan Mortgage Corp. v. Dutch Lane Assocs.*, 775 F.Supp. 133, 136 (S.D.N.Y.1991) (quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168, 60 S.Ct. 153, 154–55, 84 L.Ed. 167 (1939)). Although no specific time limit is specified for raising a defense of improper service of process, such a motion must be raised in a "reasonably timely fashion." *Id.*

In the present case, Hannon's participation in the proceedings was limited to (1) the appearance of counsel at a status conference; (2) a letter to the Court confirming defendants' motions to dismiss and suggesting alternatively that the action be stayed until the Court decided the motion in the February 1996 Action; (3) a request for an extension of time to respond to the complaint; and (4) a request for sanctions against plaintiff's counsel filed with the instant motion. These facts, even considered in conjunction, do not constitute the type or extent of involvement which constitutes a waiver of jurisdictional defenses. *See Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir.1972) (taking basic procedural steps, such as appearing, do not constitute a waiver of jurisdictional objections); *Elbex Video Kabushiki Kaisha v. Taiwan Regular Elecs. Co.*, No. 93 Civ. 6160, 1994 WL 185896, at *2–*3 (S.D.N.Y. May 10, 1994) (no waiver of improper service defense where defense participated in teleconferences with court regarding time extensions); *Securities Training Corp. v. Securities Seminar, Inc.*, 633 F.Supp. 938, 939 (S.D.N.Y.1986) (no waiver of jurisdictional defense where parties participated in settlement negotiations for ten months before defense asserted motion).

Moreover, throughout this period, Hannon has been consistent in his objections to Howard's service. In their first communication to the Court, defendants stated that the complaint had not been properly served on any defendant. *See* Letter, dated July 31, 1996, annexed to the Reply Affidavit of John G. Hutchinson, dated Feb. 3, 1997, as Exh. "2." Subsequently, at a conference held on September 18, 1996, defendants again advised the Court that they had not been properly served and thus requested permission to file appropriate jurisdictional motions. In an or-

der dated September 25, 1996, the Court held that defendants had thirty days to file any appropriate motions, including those based on jurisdiction. Given these facts, there is no support for Howard's assertion that the defendants waived their jurisdictional defenses.

The cases relied upon by Howard are inapposite. In *United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO*, 816 F.Supp. 864 (S.D.N.Y.1992), the court held that defendants had waived their defense of improper service given their "glaring inaction." *Id.* at 870. Specifically, defendants waited more than a year before bringing a motion pursuant to Rule 12(b)(5), and gave no indication during that period that they objected to the service of process. *Id.* In addition, during this interim, defendants engaged in settlement negotiations and appeared at an evidentiary hearing. *Id.* In contrast, Hannon filed the instant motion less than four months after Howard's complaint was filed, and during that period, alerted both the Court and Howard of his objections to service of process.

Howard's reliance on *Lomaglio Assocs. Inc. v. LBK Marketing Corp.*, 876 F.Supp. 41 (S.D.N.Y.1995) is similarly misplaced. In that case, the Court found that defendants had waived their 12(b)(5) defense by requesting removal to federal court without simultaneously objecting to personal jurisdiction. In the present case, no formal motions preceded defendants' instant motion pursuant to Rule 12(b)(5).

In addition, there is no support for the proposition that Hannon waived his improper service defense by seeking sanctions or attorneys' fees. Requests for affirmative relief, such as sanctions or attorneys' fees, do not waive a jurisdictional objection where, as here, those objections have been asserted prior to or simultaneously with the request for affirmative relief. *See Levine v. FDIC*, 2 F.3d 476, 478 (2d Cir.1993) (imposition of sanctions proper given that plaintiff's assertion of personal jurisdiction over defendant was without basis); *Index Fund, Inc. v. Hagopian*, 107 F.R.D. 95, 99 (S.D.N.Y.1985) (no waiver of jurisdictional defense after court

imposed sanctions on plaintiff's attorney for punitive damages claim). Accordingly, the Court finds that Hannon has not been properly served and has not waived his defense of improper service.

### B. Madonna

■ Madonna asserts that he was not properly served under Section 308 of the New York Civil Practice Law and Rules, as incorporated by Rule 4 of the Federal Rules of Civil Procedure. Section 308(2) permits service by "delivering the summons ... at the actual place of business, dwelling place or usual place of abode of the person to be served and by ... mailing the summons by first class mail to the person to be served at his or her actual place of business...." N.Y.Civ.Prac.L. & R. § 308(2) (McKinney 1996). The rule also requires that "proof of such service [ ] be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing...." *Id.* Therefore, "leave and mail" service under Section 308(2) is ineffective where a plaintiff does not file proof of service with the clerk within twenty days of the date on which the process server mailed the summons and complaint. *Johnson v. Quik Park Columbia Garage Corp.*, No. 93 Civ. 5276, 1995 WL 258153, at *2 (S.D.N.Y. May 2, 1995).

Although Howard delivered a copy of the summons and complaint to the receptionist at Peat Marwick's New York City office on or about July 25, 1996, and mailed a copy to Madonna at the same address, she failed to file a proof of service with the clerk within twenty days. Proofs of service were not filed until December 19, 1996, approximately four months after the deadline. Thus, Howard has failed to effect proper service on Madonna.

### C. Klynveld

■ Under Federal Rule of Civil Procedure 4(h)(1), service of process may be effect-

ed upon foreign associations in a judicial district of the United States by (1) delivering a copy of the summons and complaint to the association by any of the methods permitted for such service under New York law; or (2) delivering a copy to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process...." Fed.R.Civ.P. 4(h)(1). Klynveld claims that it was not properly served for two reasons. First Klynveld argues that delivering a copy of the summons and complaint to Peat Marwick's office in New York City and subsequently mailing these documents to Madonna does not constitute proper service on Klynveld because neither Peat Marwick nor Madonna are authorized to accept service of process on behalf of Klynveld in the United States. Second, Klynveld claims that even if service on Madonna did constitute service on Klynveld, Howard did not file a proper proof of service within the required twenty day period pursuant to Section 308(2).

The Court agrees with both of these contentions. Howard failed to file proof of service with the clerk of the court within the twenty-day time period under Section 308(2) of the New York Civil Practice Law and Rules. In addition, service on Peat Marwick and/or Madonna does not effect service upon Klynveld because, as discussed below, neither Peat Marwick nor Madonna nor any other Peat Marwick representative is a partner or agent of Klynveld. Similarly, no person at Peat Marwick is authorized to accept service of process on behalf of Klynveld in the United States. Finally, Howard's assertion that Klynveld has waived its jurisdictional defenses through its involvement in these proceedings is without merit. The Court has already determined that Hannon's participation in this action did not constitute a waiver of jurisdictional defenses. Klynveld's involvement in these proceedings was no greater than Hannon's, save a *motion* to substitute counsel, in which Klynveld expressly reserved its jurisdictional objections.[3]

---

**3.** Although the Court may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(5) based on improper service of process, dismissal is not mandatory. *Federal Home Loan Mortgage Corp. v. Dutch Lane Assocs.*, 775

F.Supp. at 138 n. 2. Rather, the Court has, "broad discretion to dismiss the action or retain the case but quash the service that has been made on the defendant." 5 Miller, *et al.*, Federal Practice and Procedure § 1354, at 584 (1969).

## II. Personal Jurisdiction over Klynveld [4]

■ When a defendant moves to dismiss for lack of personal jurisdiction, plaintiff bears the burden of proving that jurisdiction exists. *Daval Steel Products v. M.V. Juraj Dalmatinac*, 718 F.Supp. 159, 161 (S.D.N.Y. 1989). However, at this stage of litigation—prior to an evidentiary hearing or discovery—plaintiff may defeat such a motion by making merely a prima facie showing of jurisdiction. *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295, 298 (S.D.N.Y.1996). In addition, matters outside the pleadings may be considered in resolving a motion to dismiss pursuant to Rule 12(b)(2), *id.*, and should be construed in the non-moving party's favor, *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997). In other words, all evidence is to be construed in a light most favorable to plaintiff and all doubts are resolved in plaintiff's favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985).

■ A defendant's conduct is sufficient for the exercise of personal jurisdiction if the conduct satisfies both (1) the requirements of the long-arm statute of the forum state; and (2) the "minimum contacts" requirement of the Due Process Clause of the Fourteenth Amendment. *Ensign–Bickford Co. v. ICI Explosives USA Inc.*, 817 F.Supp. 1018, 1026 (D.Conn.1993).

■ Personal jurisdiction issues are determined by the law of the state in which the federal court sits. *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F.Supp. 175, 179 (S.D.N.Y.1995). The applicable jurisdictional laws are New York Civil Practice Law and Rules Sections 301 and 302, which address general and specific jurisdiction respectively.

### A. General Jurisdiction

Section 301 authorizes personal jurisdiction over a defendant who is "engaged in [ ] a continuous and systematic course of 'doing business' ... as to warrant a finding of its 'presence' in the jurisdiction." *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir.) (quoting *Simonson v. Int'l Bank*, 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 436, 200 N.E.2d 427, 431 (1964)), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). Occasional or casual business in the state is insufficient. Rather, under Section 301, a defendant must be doing business in the state with a "fair measure of permanence and continuity." *Id.*

■ Klynveld is a Netherlands-based association with no office or employees in the United States. In addition, Howard acknowledges that Klynveld has no mailing address or telephone listing in the United States and owns no property or bank accounts in the United States. Moreover, Klynveld has not appointed a registered agent for the service of process in the United States. Klynveld's primary functions are (1) setting standards that its member firms are required to maintain if they are to use the Klynveld name; and (2) providing general assistance upon request to member firms in obtaining professional literature and other information. These activities are funded through annual dues received from each member firm. Declaration of Don V. Christiansen, dated Nov. 7, 1996, ¶ 6. Howard does not allege that Klynveld itself performs any accounting, auditing or other professional services in the United States. Similarly, Howard does not assert that Klynveld itself generates income in the United States or shares the income of any of its member firms.

Therefore, the Court proceeds to address defendants' arguments based on jurisdiction and duplicativeness in order to determine whether the action should be dismissed or whether Howard should be given an opportunity to effect proper service.

4. Although a district court must generally resolve any doubts as to its subject matter jurisdiction over an action before reaching the issue of personal jurisdiction, a court may decide issues of personal jurisdiction first, where such action would further the interests of judicial economy and restraint. *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 155 (2d Cir.1996). Here, the interests of judicial economy would be best served by addressing the Court's personal jurisdiction over Klynveld before considering Klynveld's subject matter jurisdiction challenge, which is based on Howard's purported non-compliance with Title VII's procedural requirements.

In arguing that Klynveld is subject to the Court's general jurisdiction, Howard relies on the fact that Klynveld advertises in the United States in various media, including in print and on the internet. However, contrary to Howard's assertions, mere advertising or marketing activities do not constitute an adequate basis for general jurisdiction absent a systematic and continuous course of doing business in the forum state. *See Glater v. Eli Lilly & Co.*, 744 F.2d 213, 214–15 (1st Cir.1984); *Lane v. Vacation Charters, Ltd.*, 750 F.Supp. 120, 124 (S.D.N.Y.1990). Apart from Klynveld's marketing activities, Howard presents no evidence that Klynveld Has conducted any business in New York. Given these circumstances, Howard has not established a prima facie showing that the Court has general jurisdiction over Klynveld under Section 301.

■ Howard asserts that despite Klynveld's lack of direct contact with the United States, the Court can nonetheless exercise general jurisdiction over Klynveld under a theory of derivative jurisdiction, in which the acts of Peat Marwick are attributed to Klynveld. Specifically, Howard claims that Peat Marwick is an agent, a mere department or a partner of Klynveld, and as such, the exercise of jurisdiction over Klynveld is warranted. *See Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, 854, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *Tokyo Boeki (U.S.A.), Inc. v. S.S. NAVARINO*, 324 F.Supp. 361, 366 (S.D.N.Y.1971). However, there is no factual support for any of these assertions.

First, the complaint is devoid of any factual allegations which support Howard's claim that Peat Marwick is an agent of Klynveld. Howard concedes that Klynveld does not control the activities of Peat Marwick, does not share in the income of Peat Marwick, and does not assume any of Peat Marwick's liabilities. As such, there is no support for a finding of agency. *See Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241, 1253 (S.D.N.Y.1984), (court lacks personal jurisdiction over Australian accounting firm because firm was not an agent of the United States accounting firm bearing the same name through an international association; each firm had maintained control over its own daily operations and the two firms did not share profits or losses). Similarly, Howard's assertion that Peat Marwick is a mere department of Klynveld is without basis. A subsidiary relationship or common stock ownership is a threshold minimum to such a finding, *id.*, and here the complaint is devoid of any allegations to that effect.

■ Second, there is no support for Howard's assertion that Peat Marwick is a partner of Klynveld. In determining whether a partnership exists, factors to be considered include the intent of the parties, whether there is joint control and management of the business, whether there is sharing of the profits and losses, and whether there is a combination of property, skill, or knowledge. *Yonofsky v. Wernick*, 362 F.Supp. 1005, 1030–35 (S.D.N.Y.1973); *Boyarsky v. Froccaro*, 131 A.D.2d 710, 712, 516 N.Y.S.2d 775, 776–77 (N.Y.App.Div.1987). Application of these factors to the instant case reveals that Howard has failed to demonstrate that Klynveld and Peat Marwick are partners.

There is no evidence that Klynveld jointly controls or manages Peat Marvick's general business activities or vice versa. Moreover, as stated above, Klynveld does not share Peat Marwick's liabilities, profits or losses. In addition, there is no evidence that Peat Marwick and Klynveld share property or business skills. Given these circumstances, Howard's contention that Peat Marwick and Klynveld are partners must be rejected.

The only evidence relied upon by Howard in support of her assertion that Klynveld and Peat Marwick are partners is a series of general public statements included in Klynveld's marketing documents. While Klynveld's public relations materials suggest that Klynveld is a global firm or an international network of member firms, this fact neither justifies a legal finding of partnership nor supports Howard's assertion that Peat Marwick's acts in the United States should be attributed to Klynveld for the purposes of jurisdiction. *See Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. at 1254 n. 10. (fact that defendant firm's brochures and pamphlets described the firm as a "single cohe-

sive worldwide organization" does not warrant a legal finding of partnership absent clear facts or an agreement establishing a relationship of partnership).[5]

 In addition, a theory of partnership by estoppel fails to confer jurisdiction over Klynveld. As an initial matter, New York does not recognize a theory of jurisdiction by estoppel. *See Gelfand v. Tanner Motor Tours, Ltd.,* 339 F.2d 317, 320–21 (2d Cir. 1964); *Pfaff American Sales Corp. v. M.V. Tadeusz Kosciuszko,* No. 82 Civ. 7659, 1984 WL 1333, at *2 (S.D.N.Y. Dec.13, 1984). Moreover, the doctrine of partnership by estoppel, upon which Howard appears to rely, creates liability for a defendant based on a plaintiff's detrimental reliance upon representations that a partnership exists. *Milano v. Freed,* 64 F.3d 91, 97 (2d Cir.1995). Howard does not allege that she was misled into believing or that she detrimentally relied on the representation that Klynveld was her employer. Accordingly, the partnership by estoppel theory is of no benefit to Howard in this action.

Howard has failed to present any support for her assertion that a relationship exists between Peat Marwick and Klynveld that would justify the attribution of Peat Marwick's acts to Klynveld for jurisdictional purposes. In sum, the mere fact that Peat Marwick and Klynveld are in a contractual relationship—the primary fact upon which Howard relies in asserting jurisdiction—does not support a finding of contacts between Klynveld and this forum sufficient for the exercise of jurisdiction over Klynveld. *See Cocklereece v. Moran,* 500 F.Supp. 487, 489 (N.D.Ga.1980) ("A relationship or transaction between [a resident party] and non-resident defendants is not the equivalent of a contact between the defendants and the forum itself."). Accordingly, the Court finds that Howard has not made a prima facie showing

that Klynveld is subject to the general jurisdiction of this Court.

**B. Specific Jurisdiction**

 Section 302(a) permits long-arm jurisdiction if a defendant (1) transacts business within the state; (2) commits a tortious act within the state; or (3) commits a tortious act outside the state causing injury to a person within the state, so long as defendant (a) regularly does business or conducts other persistent conduct in the state or (b) expects or should reasonably expect the act to have consequences in the state. N.Y.Civ.Prac.L. & R. § 302(a) (McKinney 1997). In addition, for jurisdiction under this statute, the claims must arise out of the acts that form the basis for personal jurisdiction. *Id.; see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985) (for the proper exercise of specific jurisdiction, the defendant must have "purposefully directed" his activities at the forum and the litigation must "arise out of or relate to" those activities).

As an initial matter, Howard does not allege that Klynveld itself committed any tortious act within or outside the state. Moreover, as stated above, Howard has failed to make a prima facie showing that Klynveld transacts business or engages in any regular conduct within the state as contemplated by New York's jurisdictional statutes. Perhaps most significantly, none of Howard's claims arise from any act alleged to confer jurisdiction on courts in this state.

The only sense in which Howard's claims can be said to have arisen from acts committed by Klynveld in this state is if the acts of Peat Marwick are attributed to Klynveld for jurisdictional purposes. As discussed above, such a theory is without merit. Thus, the Court lacks specific jurisdiction over Klynveld.[6]

5. Moreover, the agreement between Peat Marwick and Klynveld expressly provides that "[n]othing contained herein shall be construed to place the parties in the relationship of agents, partners or joint venturers, and the Member Firm shall have no power to obligate or bind [Klynveld] in any manner whatsoever." Declaration of Don V. Christiansen, dated Nov. 7, 1996, ¶ 9.

6. Because the Court concludes that it lacks personal jurisdiction over Klynveld, Klynveld's arguments relating to lack of subject matter jurisdiction under Title VII, failure to plead fraud with particularity under Rule 9(b) and failure to state a claim upon which relief may be granted under Rule 12(b)(6) are not addressed.

### III. Duplicative Action Against Hannon and Madonna

It is well established that federal district courts possess the power to administer their dockets in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Accordingly, a federal court may dismiss a suit "for reasons of wise judicial administration ... whenever it is duplicative of a parallel action already pending in another federal court" or in the same federal court. *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F.Supp. 1210, 1213 (N.D.Ill.1983)).

District courts "are accorded 'a great deal of latitude and discretion' in determining whether one action is duplicative of another, but generally, a suit is duplicative if the 'claims, parties, land available relief do not significantly differ between the two actions.'" *Id.* (quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F.Supp. at 1213). For a second action to be duplicative, it is not necessary that the parties be identical. Rather, if the parties "represent the same interests" the court may determine the second action to be duplicative. *The Haytian Republic*, 154 U.S. 118, 124, 14 S.Ct. 992, 993–94, 38 L.Ed. 930 (1894); *see also Rivera v. Bowen*, 664 F.Supp. 708, 710 (S.D.N.Y.1987) (because "the avoidance of duplicative litigation is imperative," a second action may not be maintained where the allegations and prayer for relief are the same as in a prior action). In addition, there must be the "same rights asserted and the same relief prayed for" and the relief "must be founded upon the same facts." *The Haytian Republic*, 154 U.S. at 124, 14 S.Ct. at 993.

 The Court has little trouble finding that the instant action against Hannon and Madonna is duplicative of the February 1996 Action. The claims asserted in the instant action are virtually identical to those alleged in the February 1996 Action, and all arise out of the terms and conditions of Howard's employment with Peat Marwick. Moreover, although Hannon and Madonna are not named defendants in the February 1996 Action, they clearly represent the same interests as Peat Marwick and Anderson, the defendants in the February 1996 Action. Hannon and Madonna are both partners of Peat Marwick with Anderson, and it is apparent that these individuals are being sued precisely because of their status as Peat Marwick partners. In fact, courts have recognized the identity of interests between employees or partners and their employers in this context: "Acts by employees of one of the parties to an agreement are equally arbitrable as acts of the principals as long as the challenged acts fall within the scope of the agreement." *Gateson v. ASLK–Bank, N.V./CGER–Banque S.A.*, No. 94 Civ. 5849, 1995 WL 387720, at *5 (S.D.N.Y. June 29, 1995); *see also* October 1996 Order at 14–15 (claims against Peat Marwick partners for acts within the scope of their employment are essentially, claims against Peat Marwick and are thus encompassed by Howard's agreement to arbitrate claims against Peat Marwick). Because suits brought against partners of a signatory to an arbitration agreement are duplicative of suits against the signatory, the present suit against Hannon and Madonna is duplicative of the February 1996 Action.

 Under the Second Circuit's "first filed" rule, a court has the power to dismiss a second duplicative suit in favor of a prior pending action absent a showing of balance of convenience or special circumstances giving priority to the second suit. *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79–80 (2d Cir.1989). Howard has not proffered any special circumstances which would warrant maintaining the instant suit. Howard notes that unlike the February 1996 Action, the present action includes a claim for wrongful termination in violation of public policy. However, no claim for wrongful termination exists in New York unless the employment contains a fixed term of duration which has been breached. *Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 188–89, 538 N.Y.S.2d 771, 773–74, 535 N.E.2d 1311, 1314 (1989). Howard does not allege that she contracted for a fixed term of employment,

and in fact, the Agreement expressly states that her employment is at will. *See* Agreement, annexed to the affidavit of Deborah A. Keller, dated Nov. 12, 1996, as Exh. "B," at ¶ 6. Thus, her complaint fails to state a cause of action for wrongful termination as a matter of law. *Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d at 188–89, 538 N.Y.S.2d at 773–74, 535 N.E.2d at 1314. Even if Howard could state a claim for wrongful termination, the thrust of her claims in both actions are based on the same factual allegations and the requests for relief are essentially the same.[7]

Finally, in determining whether dismissal based on duplicativeness is appropriate, courts may consider any "special factors counselling for or against the exercise of jurisdiction." *Serlin v. Arthur Andersen & Co.*, 3 F.3d at 224. This case presents certain factors which weigh in favor of dismissal. (Specifically, Howard concedes that she filed the instant action "because the defendants ... are the subject of a $3 billion [ ] lawsuit .... Plaintiff's concern was that if [that plaintiff] prevails in that lawsuit [Peat Marwick] will have insufficient net worth and insurance coverage to satisfy the judgment, thus leaving the Plaintiff uncompensated for her injuries."). Pl.Mem. of Law, dated Dec. 24, 1996, at 41. This concession suggests that Howard's true motivation in filing this action was to secure a financially secure defendant, rather than to adjudicate distinct and meritorious claims against independent defendants. Moreover, Howard continued to pursue the instant action, consisting entirely of employment-based claims, even after the Court unequivocally held that all claims arising out of Howard's employment with Peat

Marwick are subject to arbitration. *See* October 1996 Order at 11–15. Accordingly, Howard's claims against Hannon and Madonna are duplicative of the February 1996 Action, and thus must be dismissed.[8]

## IV. Klynveld's Motion for Sanctions Pursuant to Rule 11

Rule 11 of the Federal Rules of Civil Procedure authorizes a court to impose sanctions upon an attorney who violates its terms. *See* Fed.R.Civ.P. 11(c). Because the purpose underlying Rule 11 sanctions is to deter attorneys from filing frivolous actions, a court may direct a violating party to pay monetary sanctions to compensate the opposing party's attorneys' fees and other expenses incurred as a result of the misconduct. *See* Fed.R.Civ.P. 11(c)(2).

To determine whether Rule 11 has been violated, the Court applies an objective standard of reasonableness. *Wright v. Edelman*, No. 95 Civ. 7970, 1996 WL 447773, at *3 (S.D.N.Y. Aug.8, 1996). Specifically, a claim runs afoul of Rule 11 when one of the following situations exists: "(1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; or (3) no reasonable argument has been advanced to extend, modify or reverse the law as it stands." *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir.), *cert. denied*, 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). A showing of subjective bad faith is not required. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226

---

7. In addition, the fact that Howard seeks relief against Hannon and Madonna as representatives of a purported class of defendants is irrelevant. First, Howard has failed to demonstrate that any appropriate class of defendants exists. Second, to the extent that Howard's putative class encompasses other partners of Peat Marwick, this Court has found that any claims against such defendants are duplicative of those asserted in the February 1996 Action. Finally, the Court notes that a plaintiff such as Howard, who has agreed to arbitrate all claims arising out of her employment may not avoid arbitration by pursuing class claims. Such claims must be pursued in non-class arbitration. *Champ v. Siegel Trading Co.*, 55 F.3d 269, 276–77 (7th Cir.1995).

8. The Court notes that in addition to having the discretion to dismiss the instant action, the Court also has the authority to enjoin prosecution of this action given its jurisdiction over the February 1996 Action. *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir.1974). "Where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has the jurisdiction to enjoin the prosecution of the second action." *Id.* Significantly, this rule applies "even where the parties in the two actions are not identical." *Id.*

(1987). Although the Court recognizes that sanctions must be imposed with caution so as not to chill the filing of meritorious claims, application of the above standard reveals that sanctions are warranted in the instant case.

■ The Court finds that plaintiff's counsel not only failed to make a reasonable inquiry into both the factual and legal basis of the claims against Klynveld before filing the complaint, but also refused to withdraw the complaint despite clear indications that such action was warranted. As an initial matter, plaintiff's contention that this Court had personal jurisdiction over Klynveld based on some derivative theory of jurisdiction was without basis. As stated above, this case presents no factual support for a finding of jurisdiction based on theories of partnership or agency. Likewise, there is no legal support for Howard's theory of jurisdiction by estoppel.

In addition to the jurisdictional problems, plaintiff's counsel had no reasonable basis for filing the instant action given Howard's clear obligation to arbitrate her claims against the defendants. Although plaintiff's counsel initially contended that there was some doubt as to the validity and/or scope of the arbitration clause in the Agreement, any such doubts were resolved by this Court in the October 1996 Order. There, the Court explicitly held that "the arbitration clause at issue governs *any* claims related to Howard's employment with [Peat Marwick]." October 1996 Order at 13 (emphasis in original). As such, counsel's argument that Howard's claims against Klynveld—which all undeniably arise out of her employment with Peat Marwick, and in fact virtually mirror the claims asserted in the February 1996 Action—are not subject to arbitration is patently frivolous.[9] Even a cursory review of the law reveals that Howard's claims based on her employment with Peat Marwick are subject to arbitration as per the Agreement, regardless of whether she targets new defen-

dants. *See Doctor's Assoc., Inc. v. Stuart*, 85 F.3d 975, 984 (2d Cir.1996) (Federal Arbitration Act "plainly requires that a district court stay litigation where *issues* presented in the litigation are the subject of an arbitration agreement" and a party may not eschew its duty to arbitrate those issues by "introducing the identical controversy" against nonsignatories to the agreement) (emphasis in original).

Finally, a brief review of the claims set forth in the instant action reveals that numerous causes of action are incurably defective on their face. For example, Howard asserts a claim for wrongful termination in violation of public policy without any allegation that her employment with Peat Marwick was for a fixed term of duration. It is well established under New York law, however, that no cause of action for wrongful termination in violation of public policy exists for employees at will. *Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d at 188–89, 538 N.Y.S.2d at 773–74, 535 N.E.2d at 1312–14. Similarly, the complaint purports to assert a Title VII claim against Klynveld despite the fact that Howard neither submitted a charge to the Equal Employment Opportunity Commission against Klynveld nor received a notice of right to sue with respect to Klynveld, as statutorily required. *See* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(e)(1). Moreover, even if Howard's Equal Employment Opportunity Commission charge and right to sue notice regarding Peat Marwick could apply to Klynveld, the ninety day limitations period in which suit must be brought against Klynveld expired five months before the filing of this action. *See* 42 U.S.C. § 2000e–5(f)(1).[10]

Howard's counsel offers little in defense of the motion for sanctions against him. First, counsel baldly asserts that Klynveld's motion for sanctions is untimely—a contention lacking legal and factual support. At a case conference held on September 18, 1996, the

---

9. Howard's purported reasonableness is belied by the fact that even after the Court issued the October 1996 Order and defendants announced their intention to move for sanctions unless Howard's complaint was withdrawn, plaintiff's counsel refused to withdraw this action.

10. Notably, Howard appears to abandon her Title VII claim in a footnote in her memorandum of law in opposition to Klynveld's motion to dismiss. *See* Pl.Mem. of Law, dated Dec. 24, 1996, at 2 n. 1.

Court expressly stated that it would accept a motion for sanctions together with a motion to dismiss the complaint. In addition, Klynveld fully complied with the timing and notice requirements of Rule 11. Klynveld filed its motion for sanctions on December 9, 1996, twenty-one days after giving plaintiff notice of its intent to move for sanctions. *See* Fed.R.Civ.P. 11(c)(1)(A). Second, Howard argues that she did not file the instant action for the improper purpose of avoiding arbitration, but rather "to assure the payment of any compensation that plaintiff may be awarded." Pl.Mem. of Law, dated Dec. 24, 1996, at 41. This stark concession, that her sole or primary reason for suing Klynveld was to ensure a judgment in the event that she succeeded against Peat Marwick, provides further support for the Court's conclusion that no reasonable inquiry was made before filing the instant action and thus that the imposition of sanctions pursuant to Rule 11 is warranted.[11]

■ The Court has the discretion to fashion an appropriate sanction for a Rule 11 violation. The critical consideration in exercising this discretion is that the policy underlying Rule 11 is to "sanction" rather than to "reimburse[ ]." *Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. 44, 51 (S.D.N.Y.1993). However, the typical sanction imposed is the payment of the other party's reasonable attorneys' fees which were incurred as a result of the violation. *Eastway Construction Corp. v. City of New York*, 821 F.2d 121, 123 (2d Cir.), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Nonetheless, the sanction should not exceed the amount required to achieve the desired result: the minimum that will reimburse the party adversely affected by the improper filing and deter the proscribed conduct. *Id.*

■ To justify an award of attorneys' fees and expenses, the party seeking such an award must provide the court with time and expense records, specifying for each attorney who performed work on the matter the date, hours expended and the nature of the work performed. *Durant v. Traditional Invs., Ltd.*, 135 F.R.D. 42, 50 (S.D.N.Y.1991). Fees and expenses must be both necessary and reasonable. *Nemeroff v. Abelson*, 94 F.R.D. 136, 146 (S.D.N.Y.1982), *aff'd*, 704 F.2d 652 (2d Cir.1983). Accordingly, Klynveld is directed to submit to the Court detailed billing records reflecting the work expended on the instant motion so that an appropriate sanction award may be established.

## V. Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Powers

■ Section 1927 provides that "any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An award pursuant to this statute must be supported by a finding of bad faith. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). An action is brought in bad faith when it is "entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977).

Likewise, as part of its inherent powers, a court has the authority to impose sanctions for improper conduct. *Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. at 49. According to the Supreme Court, this power is derived from the court's "very nature" and in its need to be able to "manage [its] own affairs as to achieve the orderly and expeditious

---

**11.** Similarly, Howard's claim that defendants did not file a timely response to the complaint and are thus in default is utterly without basis. On July 31, 1996, fourteen days after the complaint was filed, defense counsel informed the Court that no defendant had been properly served. On August 1, 1996, the Court ordered the parties in this action and the February 1996 Action to appear at a case conference and further stated that the defendants in this action were under no obligation to answer the complaint until further notice. At the conference on September 18, 1996, defendants requested permission to file the instant motions, as is required by the Court's individual rules. Permission was granted at that time and confirmed in an order dated September 25, 1996.

disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). One aspect of this power is a court's ability to assess costs and attorneys' fees against either the client or his attorney when a party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. *Wood v. Brosse U.S.A., Inc.,* 149 F.R.D. at 49. Because of the "very potency" of a court's inherent powers, the Supreme Court has cautioned that it should be used with "restraint and discretion." *Chambers v. NASCO, Inc.,* 501 U.S. at 44, 111 S.Ct. at 2132. Accordingly, as with sanctions pursuant to Section 1927, a particularized showing of bad faith must be made. *United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO,* 948 F.2d 1338, 1345 (2d Cir.1991).[12]

Courts have declined to impose sanctions pursuant to Section 1927 or a court's inherent powers absent clear evidence that the challenged actions are entirely without color, and are taken for reasons for harassment, delay or other improper purpose. *Oliveri v. Thompson,* 803 F.2d at 1272. Moreover, a high degree of specificity in the factual findings underlying such sanctions is required. *Id.*

On the present record, there is an insufficient showing that Howard's complaint "must have been undertaken for some improper purpose." *Id.* at 1273. Although the Court finds that plaintiff's counsel failed to make a reasonable legal and/or factual inquiry before bringing the instant action, there has not been a clear and specific showing of bad faith. Accordingly, defendants' motions for sanctions pursuant to Section 1927 and the Court's inherent powers are denied.

## CONCLUSION

For the reasons set forth above, Klynveld's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted. In addition, Hannon and Madonna's motion to dismiss based on the duplicative nature of this action

is granted. Klynveld's motion for sanctions pursuant to Rule 11 is granted. Accordingly, counsel for Klynveld are directed to submit detailed billing records for the purposes of fashioning an appropriate sanction award. Finally, defendants' motions for sanctions pursuant to Section 1927 and the Court's inherent powers are denied.

SO ORDERED.

---

**12.** According to the Second Circuit, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is … that awards under § 1927 are made only against attorneys … while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri v. Thompson,* 803 F.2d at 1273.