**In re ASIA PULP & PAPER SECURITIES LITIGATION**

**This Document Relates to All Actions**

**No. 01 Civ. 7351(JES).**

United States District Court, S.D. New York.

Nov. 25, 2003.

Abbey Gardy, LLP, New York, New York (Joshua N. Rubin, of counsel), Mil-

berg Weiss Bershad Hynes & Lerach, LLP, New York, New York (Paul D. Young, Lawrence D. McCabe, of counsel), for plaintiffs.

Jones, Day, Reavis & Pogue, New York, New York (Robert W. Gaffey, Jayant W. Tambe, of counsel), for Defendant Asia Pulp & Paper Co., Ltd.

Sidley Austin Brown & Wood LLP, New York, New York (James J. Sabella, of counsel), for Defendant Andersen Worldwide Société Coopérative.

Clifford Chance, New York, New York (James B. Weidner, Joseph P. Cyr, of counsel), for Defendant Merrill Lynch & Co.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiffs allege that they were defrauded by defendants in the purchase of certain securities issued by Asia Pulp & Paper Company, Ltd. ("APP"). Defendant Andersen Worldwide Société Coopérative ("AWSC") moved to dismiss plaintiffs' Consolidated Amended Class Action Complaint (the "Amended Complaint" or "Am. Compl."). For the reasons set forth below, the Court grants defendant's motion to dismiss and further concludes that the dismissal is appropriate for immediate appellate review under Fed.R.Civ.P. 54(b).

## BACKGROUND

Plaintiffs, purchasers of APP American Depository Shares ("ADSs") and bonds, brought the instant action against APP and various other individuals and institutions, including APP's officers and directors; its investment banker, Merrill Lynch & Co.; its independent auditor, Arthur Andersen Singapore ("Andersen Singapore"); and AWSC (collectively "defendants"), alleging that they violated federal securities laws.[1] Plaintiffs' Amended Complaint contains allegations of primary liability under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b–5 promulgated thereunder, see Am. Compl. ¶¶ 216–34, and Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Securities Act"), see Am. Compl. ¶¶ 275–319, 320–332. Plaintiffs' claims under Section 10(b) of the Exchange Act are based on allegedly false and misleading statements in various registration statements, prospectuses, Form 20–F filings and press releases issued by APP during the class period, August 28, 1998 to April 6, 2001. See Am. Compl. ¶¶ 216–34. These statements, plaintiffs maintain, were intended to and did artificially inflate the price of APP's stock. See id. Plaintiffs' claims under Sections 11 and 12 of the Securities Act relate to allegedly false and misleading statements contained in the registration statements issued in connection with certain public offerings of securities – plaintiffs' Section 11 claim relates to a 1998 debt offering on behalf of one (1) of APP's related entities and a 1999 secondary offering of ADSs by APP, see Am. Compl. ¶¶ 275–76; plaintiffs' Section 12(a)(2) claim relates only to the 1999 ADS offering, see Am. Compl. ¶¶ 320–332.[2] In addition to claims of primary liability, the Amended Complaint

1. Defendants APP and Merrill Lynch & Co. also have submitted motions to dismiss, which will be addressed by the Court in a separate Order. Because the Court's Opinion relates solely to the motion submitted by AWSC, the facts set forth below are those pertinent only to the discussion of AWSC's claims.

2. Plaintiffs' claim of liability under Section 12(a)(2) is only against APP and Merrill Lynch & Co.; it does not involve either Andersen Singapore or AWSC.

contains allegations against AWSC and certain other defendants based on "control person" liability under Section 20(a) of the Exchange Act and Section 15 of the Securities Act.

Plaintiffs' allegations of false and misleading statements are based on APP's failure to disclose information with respect to the following transactions: (1) two (2) currency swaps which were required to be disclosed pursuant to a written policy; (2) certain receivables owed to APP on transactions between APP and several British Virgin Islands companies; (3) certain transactions with allegedly related parties; and (4) certain deposits APP made at private banks allegedly controlled by APP's majority shareholders. Plaintiffs' Section 11 and Section 12(a)(2) claims also include allegations that APP overvalued its property, plant and equipment in its registration statements. *See* Am. Compl. ¶¶ 297–301.

Plaintiffs' allegations against AWSC stem from allegedly fraudulent audits conducted by Andersen Singapore, which plaintiffs maintain were integral to APP's fraudulent scheme and for which Andersen Singapore is primarily liable. More specifically, plaintiffs' Amended Complaint alleges, *inter alia*, that Andersen Singapore audited and opined on the publicly filed financial statements of APP that were included and/or incorporated by reference in all Form 20–Fs, prospectuses and registration statements filed by APP, falsely representing that its examinations were made substantially in accordance with U.S. Generally Accepted Accounting Principles ("GAAP") and U.S. Generally Accepted Auditing Standards ("GAAS"). *See* Am. Compl. ¶¶ 19, 76, 101, 224–234. Plaintiffs' Amended Complaint does not contain any allegations that AWSC directly participated in the above audits or that it made any material misrepresentations.

As set forth in the Amended Complaint, AWSC is part of the Andersen Worldwide Organization established by Arthur Andersen & Co. in 1977 to increase its global presence. *See* Am. Compl. ¶ 20. AWSC is a Swiss Société Coopérative formed under the Swiss Federal Code of Obligations and domiciled in Geneva, Switzerland. It was created as "an umbrella entity" for the Andersen Worldwide Organization's member firms, such as Andersen Singapore. *See* Am. Compl. ¶ 20. Plaintiffs allege that this worldwide structure was designed to "maintain [a] 'one firm' concept, and was ... intended to foster the belief that Andersen operates as a single entity." *Id.* According to plaintiffs, AWSC achieves this goal primarily through: (1) partner overlap; (2) sharing of costs and profits; (3) global setting of professional standards; and (4) maintenance of a global infrastructure and administration.[3] *See id.* ¶ 22.

---

**3.** With respect to partner overlap, the Amended Complaint states that "[AWSC] is a partnership made up of more than 4,800 partners from 390 offices in 84 different countries worldwide.... Every member firm and its practice partners enter into a Member Firm Inter Firm Agreement ('MFIFA') with [AWSC]." Am. Compl. ¶ 22(a). The Amended Complaint also states that "[AWSC] coordinates the sharing of costs and allocation of revenues and profits among its partners and its offices around the world." *Id.* ¶ 22(b). Individual partners' earnings allegedly are based on global earnings, allocated in accordance with a pre-determined formula. Plaintiffs' claim of global setting of professional standards is based on a standard agreement that AWSC's international offices enter into, agreeing to be bound by certain professional standards and principles. Finally, the Amended Complaint states that "[AWSC] handles all borrowing on behalf of its international offices, and maintains the financial records, payroll and employee and health benefits of those international offices" and that "[a]ll of Andersen's offices ... share global computer operations, a worldwide tax structure and training facilities." *Id.* ¶ 22(d).

Plaintiffs also allege that AWSC markets this "one-firm" concept in its news releases, web site and recruiting brochures. *See id.* ¶ 23.

The first class action complaint in this action was filed by several members of the Hertzberg family on August 8, 2001 before District Judge Lewis A. Kaplan. Subsequently, several other related complaints were filed representing various groups of plaintiffs. Judge Kaplan ordered that the actions be consolidated and that plaintiffs submit a consolidated complaint. On May 20, 2002, after plaintiffs instead attempted to proceed on two (2) separate complaints, several defendants, including AWSC, moved to dismiss the complaints. Without reaching the merits of defendants' claims, Judge Kaplan dismissed the motions without prejudice in an Order dated May 29, 2002 and again directed plaintiffs to file a single, consolidated complaint. On June 5, 2002, plaintiffs filed the Amended Complaint. On July 8, 2002, AWSC, along with other defendants, filed a motion to dismiss the Amended Complaint. In October 2002, after AWSC and other defendants had submitted papers in support of their motions but prior to oral argument, the consolidated action was transferred to this Court. Oral argument was held on all motions on May 5, 2003. To date, defendant Andersen Singapore has filed no appearance in this case.

## DISCUSSION

On a motion to dismiss, the allegations in the complaint are accepted as true, *see Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998), and all reasonable inferences are drawn in the plaintiffs' favor. *See Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995); *Cos-*

*mas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, a motion to dismiss should only be granted if it appears that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *See Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Furthermore, in deciding the motion, the Court may consider documents referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or were known to the plaintiffs at the time of bringing suit, or matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002).

## I. *Section 20 and Section 15 Liability*

As noted above, plaintiffs allege that AWSC is liable as a "control person" under Section 20(a) of the Exchange Act and Section 15 of the Securities Act by virtue of its relationship to Andersen Singapore, APP's independent outside auditor. AWSC maintains to the contrary that it merely "coordinates the activities of other distinct legal entities around the world, including [Andersen Singapore] . . . , that have contracted with AWSC to participate in the Andersen network." *See* Defendant AWSC's Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint ("Def. AWSC's Mem.") at 1.[4]

---

4. As an alternative basis for dismissal, defendant AWSC argues that the Court lacks, or should decline to exercise, personal jurisdic-

tion over AWSC. *See* Def. AWSC's Mem. at 5–8. AWSC's assertion is based on the lack of any allegations in the Amended Complaint

■ To establish a prima facie claim of control person liability under Section 20(a) of the Exchange Act, a plaintiff must show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) "that the controlling person was in some meaningful sense a culpable participant" in the primary violation. *See* 15 U.S.C. § 78t(a); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir.1998) (quoting *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1472 (2d Cir.1996)). The control person liability provisions of Section 20(a) of the Exchange Act are analogous to those of Section 15 of

the Securities Act.[5] Although worded differently, both provisions are generally interpreted the same way.[6] *See Wallace v. Buttar*, 239 F.Supp.2d 388, 395, n. 1 (S.D.N.Y.2003) (citing *Farley v. Henson*, 11 F.3d 827, 835 (8th Cir.1993) and *Maher v. Durango Metals*, 144 F.3d 1302 (10th Cir.1998)). A split has emerged amongst the district courts in this circuit, however, as to whether Section 15 claims require that plaintiffs allege the additional element of "culpable participation." *Compare De-Maria v. Andersen*, 153 F.Supp.2d 300, 314 (S.D.N.Y.2001) (requiring a showing of

---

that AWSC engaged in actionable conduct in the United States, as well as AWSC's unique status as a société coopérative under Swiss law, which requires that it be domiciled and have its residence in Switzerland. Furthermore, AWSC states that Swiss law does not recognize this Court's jurisdiction over it in a case of this kind. According to AWSC, none of the exceptions under Swiss law that would allow recognition – party consent or a contractual arrangement for the resolution of claims, for example – applies in this case.

Although the Court is inclined to agree that it lacks *in personam* jurisdiction over AWSC based on the facts alleged in the Amended Complaint, because, as discussed below, it grants AWSC's motion to dismiss on the merits, it assumes jurisdiction for the purpose of resolving the motion.

5. Section 20(a) of the Exchange Act provides:
    Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly induce the act or acts constituting the violation or cause of action.
    15 U.S.C. 78t(a).
    Section 15 of the Securities Act provides:
    Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock owner-

ship, agency, or otherwise, controls any person liable under Section 11, or 12, shall also be liable jointly and severally with and to the same extent as such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.
    15 U.S.C. 77o.

6. Because Section 15 does not require a showing of scienter or fraud, and because it arises under the Securities Act, plaintiffs need only plead in accordance with Fed.R.Civ.P. 8(a); Section 15 claims are not covered by the Private Securities Litigation Reform Act (the "PSLRA") or the heightened pleading standard of Fed.R.Civ.P. 9(b). *See In re Init. Public Offering Sec. Litig.*, 241 F.Supp.2d 281, 352–53, 392–97 (S.D.N.Y.2003) (noting that Rule 9(b) only applies to claims where fraud is an essential element; PSLRA applies only where scienter is an essential element and claim arises under the Exchange Act).

It is less clear, however, whether the PSLRA – and thus the requirements of increased specificity and a showing of scienter – applies to claims under Section 20(a) of the Exchange Act. *See, e.g., In re Init. Public Offering*, 241 F.Supp.2d at 392–97 (tracing the history of Section 20(a) jurisprudence in the Second Circuit and concluding that Section 20(a) does not require pleading of scienter). The Court need not decide this issue, however, because it concludes that plaintiffs have failed to satisfy their burden under either standard.

culpable participation), *with In re Deutsche Telekom AG Sec. Litig.*, No. 00 Civ. 9475, 2002 WL 244597, at *6 (S.D.N.Y. Feb.20, 2002) (requiring only a showing of control over primary violator); *see also Dorchester Investors v. Peak Trends Trust*, No. 99 Civ. 4696, 2003 WL 223466, at *3 (S.D.N.Y. Feb. 3, 2003) (discussing cases and concluding that majority of courts have not required a showing of culpable participation). The Second Circuit has yet to pass on this issue. Although the Court finds that plaintiffs fail to sufficiently allege the element of culpable participation, it need not decide whether that element is required in the context of a Section 15 claim because, as discussed below, the Court concludes that the Amended Complaint is also deficient with respect to the necessary element of control.

The Court assumes *arguendo* that the allegations in plaintiffs' Amended Complaint are sufficient to establish the first element of control person liability – namely, a primary violation by Andersen Singapore under Section 10(b) of the Exchange Act (for Section 20(a) liability) and/or Section 11 of the Securities Act (for Section 15 liability). To establish the second element of control over the primary violator, a plaintiff must show that the defendant possessed "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b–2; *see also First Jersey Securities, Inc.*, 101 F.3d at 1472–73. To survive a motion to dismiss, a plaintiff "need only plead facts supporting a reasonable inference of control." *Gabriel Capital, L.P. v. NatWest Fin. Inc.*, 122 F.Supp.2d 407, 426–27 (S.D.N.Y.2000) (citations omitted).

In this case, plaintiffs have failed to plead facts that would support any such inference. To the extent plaintiffs attempt to allege facts in support of the notion that AWSC directed the "management and policies" of Andersen Singapore, their allegations are inadequate. At most, the Amended Complaint alleges generally that AWSC set "professional standards and principles" under which the individual offices operated. However, the Amended Complaint is bereft of any allegations that AWSC, pursuant to an agreement or otherwise, was able to control or in any way influence the particular audits conducted or opinions offered by its individual member firms. That being so, the Court finds that such conclusory allegations are insufficient to state a claim of control person liability as defined by the Second Circuit. Rather, plaintiffs rely solely on the "one-firm," unified-company theory, which has been rejected by courts in other contexts. *See, e.g., Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 662–63 (S.D.N.Y.1997), *aff'd*, 173 F.3d 844, 1999 WL 265022 (2d Cir.1999) (dismissing allegations of personal jurisdiction based on "public relations materials suggest[ing that KPMG] is a global firm or an international network of member firms" because they do not support a legal finding of partnership) (citing *Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241, 1254, n. 10 (S.D.N.Y.1984)); *In re AM Int'l, Inc. Sec. Litig.*, 606 F.Supp. 600, 607 (S.D.N.Y.1985) (dismissing aiding and abetting allegations against "various foreign affiliates of Price Waterhouse [that were not involved in the relevant decisions] on the theory that all the Price Waterhouse firms world-wide are in fact one entity and acted as agents for one another").

## II. *Rule 54(b) Certification*

Although the Court is mindful of the federal policy against piecemeal appeals, the Court finds that in this case certification under Rule 54(b) of the Federal Rules

of Civil Procedure is warranted. In this case, the only issue raised by an appeal pursuant to Rule 54(b) involves the legal sufficiency of the Amended Complaint as to defendant AWSC. That issue is unrelated to the question of whether the legally sufficient claims against the remaining defendants will be proven at trial.

■ Moreover, the judicial economy concerns underlying Rule 54(b) also support the conclusion that there is no just reason for delaying an appeal. If the Court is incorrect in its determination that the allegations in the Amended Complaint are insufficient, a second trial and duplicative discovery may have to take place as to the erroneously dismissed defendant. Such costly and duplicative proceedings can be avoided by a Court of Appeals ruling on the sufficiency issue prior to the completion of discovery and the trial with respect to the remaining defendants.

The issue presented here, the sufficiency of the Amended Complaint as to defendant AWSC, is a discrete and straightforward legal question that the Court of Appeals can resolve quickly and which will serve the goal of judicial economy. It follows that a Rule 54(b) certification will bring about a more expedious and just result for both the parties and the Court. *See Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 286 (2d Cir.1974).

### CONCLUSION

For the reasons set forth above, the Court finds that there is no just reason for delay in the appeal of this issue and directs that the Clerk shall enter judgment dismissing the Amended Complaint as against defendant AWSC pursuant to Fed. R.Civ.P. 54(b).

It is **SO ORDERED**.